Bergan, J.
An ordinance of the Village of Laurel Hollow in Nassau County authorizes the village Building Inspector to ‘ ‘ enter any building or premises at any reasonable hour ’ ’ in discharging his duty to ‘ ‘ enforce the provisions of ’ ’ the Building Zone Ordinance of the village (art. X, § 10.1). The ordinance provides that a violation of its mandate is disorderly conduct with a prescribed punishment (§ 10.2).
Defendant Laverne is a designer of furniture, fabrics, wall coverings and similar materials. The corporation of which he is president, Laverne Originals, Inc., is the owner of a large dwelling house, ‘ ‘ the mansion of the old Tiffany estate ’ ’ in Laurel Hollow in which the defendant and his wife live. For a long time a controversy existed between the village and defendant over his right to carry on this type of business or professional activity in an area zoned for residential use. Litigation some 10 years ago resulted in an injunction against the cor-portion (Incorporated Vil. of Laurel Hollow v. Laverne Originals, 283 App. Div. 795, affd. 307 N. Y. 784),
On three occasions in 1962 the village Building Inspector, acting under authority of the ordinance, entered the premises and made observations after he got in. These observations became the basis of three separate criminal prosecutions against appellant Laverne before the Police Justice of the village for violating sections 5.0 and 10.2 of the ordinance which prohibit and make it a criminal offense to conduct a business in a non-business zone. For the purpose of trial the three informations were consolidated and defendant was convicted on each charge and received a single six months’ jail sentence which was suspended. The convictions were affirmed in the County Court, and defendant is here by permission.
The important question which the appeal brings here is the validity of that provision of the village ordinance which pur *307 ports by public authority to sanction entry into private premises by an official without the consent of the occupant and, indeed, against his resistance, for the purpose of obtaining evidence for a criminal prosecution.
There are some slight differences in the facts surrounding each of the three separate entries by the Building Inspector, but all are substantially similar enough to be governed by the principle that entry was made, not by consent, but by the force of public authority. On two occasions, July 24 and December 17, 1962, there was objection by the persons on the premises to the inspector’s entry; on the other occasion, October 18, 1962, the inspector was accompanied by the Mayor of the village and the Deputy Mayor, who was also a trustee of the village ‘ ‘ in charge of police ’ ’. A sergeant of police went to the scene with his superior but seems not to have entered the premises.
The degree of resistance to this last-described search is not certain in the record, but it is clear that there is no proof of consent and a submission to the power of public authorities in circumstances of this kind is not a consent (People v. Loria, 10 N Y 2d 368; Johnson v. United States, 333 U. S. 10). Thus we treat all three entries into defendant’s premises, resulting in the three criminal prosecutions, as having the same legal consequence.
Probably an entry into private premises by a public officer without a search warrant against the resistance of the occupant and in pursuance of the authority of law for the purpose of eliminating a hazard immediately dangerous to health and public safety is constitutionally valid if the purpose be summary or other administrative correction or as a foundation for civil judicial proceedings (Frank v. Maryland, 359 U. S. 360 [1959], rehearing den. 360 U. S. 914; Eaton v. Price, 364 U. S. 263 [1960]).
Appellant argues with some force that the history of the Fourteenth Amendment demonstrates that it was the intention of its framers to close out all searches of private property without judicial warrants and this regardless of whether the product of the search was utilized for a criminal prosecution or a civil remedy. (See, e.g., discussion by Prettyman, J., in District of Columbia v. Little, 178 F. 2d 13, affd. on other grounds 339 *308 U. S. 1; 1 Cooley, Constitutional Limitations [8th ed.], p. 611, n. 1; Entick v. Carrington, 19 How. St. Tr. 1029, 95 Eng. Rep. 807.)
But we do not have before us a search leading to summary administrative action or civil proceedings to preserve health or public safety, but rather official searches of private premises without a warrant which have become the bases of criminal prosecutions and convictions.
These are quite different things and, although we reserve until an appropriate case may come here the validity of a search utilized for civil action, we are of opinion that the searches by the public officers of defendant’s home without warrants for the purpose of criminal prosecutions were to that extent in violation of his constitutional rights.
Reliance is placed by the People on Frank v. Maryland (supra). But the court was not there dealing with the validity of a criminal conviction based upon what a public officer found on a search of premises without a warrant. It was dealing, rather, with a conviction for refusal of the defendant to allow a health inspector of the City of Baltimore who had found rat dung piled high outside his premises to go inside to find the source of the rat infestation.
Mr. Justice Frankfurter writing for the court (p. 367) was careful to note that “ Inspection without a warrant ” as an adjunct to “ a regulatory scheme for the general welfare ” and “ not as a means of enforcing the criminal law ” has long historical antecedents.
In summarizing the judgment of the court it becomes clear (pp. 371-372) that the opinion is not dealing with a criminal conviction based on “ search ” or “ inspection ” without a warrant.
Although the building inspector case arising in Dayton (Eaton v. Price, supra), was, like Frank, based upon a conviction for refusing access of a building inspector to a dwelling, and not a conviction based on evidence found on a search without warrant, and followed in its effect the rule of Frank, the decision did not rest upon a clear majority of the Justices who, one Justice not participating, divided four to four, with a resulting affirmance of the Ohio court. Whether Eaton has had any effect on the strength of the Frank rule remains for future decision, but *309 neither decision sanctions the searches resulting in the criminal convictions now before us.
The People also argue that, in failing to comply with the procedural requirements of section 813-d of the Code of Criminal Procedure which took effect April 29,1962 (L. 1962, ch. 954), defendant waived the objection to the unlawful search and, therefore, to the testimony of the village officials of their observations of the criminal acts charged and such testimony was properly received in evidence.
Section 813-d is literally addressed only to physical evidence. It does not, in terms, authorize the suppression of oral testimony to be given by a witness who has learned facts through an unlawful search. The section is part of title II-B of the code which deals generally with motions for the return of property or the suppression of evidence obtained as a result of unlawful search and seizure.
This title of the code expressly deals with ‘ ‘ property, papers or things, hereinafter referred to as property” (§ 813-c). Section 813-d requires a motion for suppression with reasonable diligence before the trial, with carefully laid out exceptions, and provides that, if such a motion is not made, the defendant shall be “ deemed to have waived any objection during trial to the admission of evidence based on the ground that such evidence was unlawfully obtained.”
No point was made by the People before the Police Justice at the trial when objection on constitutional grounds was made to the testimony of observations by the public officials or before the County Court on appeal that the defendant had failed to comply with the procedure set up in title II-B, and the People must be deemed to have waived that objection. In any event the appellant ought not be found to have been precluded in his objection by not moving to suppress. The enactment of this procedure as part of the code followed the decision in Mapp v. Ohio (367 U. S. 643) and is clearly an attempt, in response to that decision, to clarify steps to be followed where unlawful search and seizure is claimed (Interim Report, Temporary Commission on Revision of Penal Law and Criminal Code [N. Y. Legis. Doc., 1962, No. 41], p. 19). The full sense of title II-B is to provide a means of suppressing as evidence or restoring to the owner tangible evidence unlawfully seized.
*310 A statute such as this should not be applied literally to what a witness has observed, carries in his memory, and will some day in court articulate into a narrative in words. This is not “ material ” for suppression in the way physical things which are held as evidence may be treated. The normal way to protect a defendant’s rights from the narrative of things learned by an unlawful search is not to take the testimony of the witness on objection when it is actually offered. (Cf. People v. O’Neill, 11 N Y 2d 148, 153-154.)
We reach the conclusion that the criminal convictions of appellant were the result of an unlawful search of his home and should not stand (Mapp v. Ohio, supra).
The judgment of the County Court affirming the convictions of defendant should be reversed and the informations dismissed.