Erwine **LAVERNE** and Estelle Laverne,
Plaintiffs,

v.

Howard J. **CORNING**, Jr., Mayor, Hutchinson Dubosque, Deputy Mayor, Police Commissioner, and a Trustee, Orin Leach, John Mackay and Douglas Despard, Trustees, Martin Dwyer, Chairman of the Planning Board, Hugh Johnson, Building Inspector, and Edward J. Meehan, Police Sergeant, jointly and severally and individually and as respective officers as stated of the Incorporated Village of Laurel Hollow, Defendants.

No. 67 Civ. 2830.

United States District Court,
S. D. New York.

July 6, 1970.

Supplemental Memorandum
Aug. 20, 1970.

Lubell, Lubell, Fine & Schaap, New York City, for plaintiffs; Jonathan W. Lubell and Stephen L. Fine, New York City, of counsel.

Morris H. Schneider, County Atty. of Nassau County, N. Y., for defendants; Gerrold N. Cohen, Deputy County Atty., of counsel.

TENNEY, District Judge.

This action commenced by plaintiffs Erwine and Estelle Laverne under the

Federal Civil Rights Act, 42 U.S.C. § 1981 et seq., alleges in two separate counts on behalf of the plaintiff husband and wife, respectively, that on three specified dates in 1962 the defendants, while *acting in their official capacity* as officers of the Incorporated Village of Laurel Hollow (hereinafter referred to as the "Village"), unlawfully entered upon plaintiffs' premises and conducted unlawful searches and seizures thereon in violation of plaintiffs' constitutional rights protected under the Fourth and Fourteenth Amendments to the Constitution. In two additional counts (not the subject of the within motion) plaintiffs further allege that the same defendants conspired to deprive plaintiffs of these constitutional rights. Predicated upon the above allegations, compensatory and punitive damages are sought.

Pursuant to Fed.R.Civ.P. 56, plaintiffs now move for summary judgment, interlocutory in character, solely on the issue of defendants' liability to them for compensatory damages on the first two counts of their complaint.

By cross-notice of motion, dated April 8, 1970, defendants also move for summary judgment.

There is apparently no dispute as to the following facts:

Each defendant is an officer of the Village, and at all times relevant herein plaintiffs resided and maintained an art studio on premises located in the Village. On July 24, October 18 and December 17, 1962, one or more of the defendants, acting as an officer of the Village and pursuant to public authority, entered plaintiffs' premises without the consent of either plaintiff and conducted a warrantless search of the premises. On two of these occasions, photographs of the interior of the premises were also taken. On October 18 and December 17, each defendant acted with the knowledge of the others and pursuant to his local authority. The fruits of these uninvited entries and warrantless searches were used in a subsequent criminal prosecution against the plaintiff husband, and

in a quasi-criminal and civil proceeding against both plaintiffs for their alleged violation of a prior injunction enjoining them from further violating one of the Village's building zone ordinances. Based upon a specific finding by the New York Court of Appeals that the searches and seizures were unlawful, the plaintiffs ultimately succeeded in each of the three above-mentioned proceedings. People v. Laverne, 14 N.Y.2d 304, 251 N.Y.S.2d 452, 200 N.E.2d 441 (1964); Incorporated Village of Laurel Hollow v. Laverne Originals, Inc., 24 App.Div. 2d 616, 262 N.Y.S.2d 625 (1965).

Plaintiffs admit that no Notice of Claim has been served upon the Village or the defendants, and that the action was not commenced within three years after the occurrence of the events upon which the claim is based.

In view of the sixteen years of hostile litigation between the plaintiffs herein and the Village, a brief chronological summary of some of these lawsuits should be useful in illuminating the present posture of the instant suit.

In 1954, the Appellate Division of the Supreme Court of the State of New York modified and affirmed a judgment below enjoining plaintiffs from using their premises in violation of Section 5.0 of the Village's Building Zone Ordinance. Incorporated Village of Laurel Hollow v. Laverne Originals, Inc., 283 App.Div. 795, 128 N.Y.S.2d 326, aff'd, 307 N.Y. 784, 121 N.E.2d 618 (1954).

In 1963, Mr. Laverne was criminally prosecuted and convicted, and Mr. and Mrs. Laverne were adjudged in contempt of court and fined for violating the 1954 injunction. See Incorporated Village of Laurel Hollow v. Laverne, Inc., *supra*.

In 1964, the New York Court of Appeals reversed the criminal convictions, specifically finding the warrantless searches and seizures unlawful and in violation of plaintiffs' constitutional rights protected by the Fourth and Fourteenth Amendments. People v. Laverne, *supra*.

The following year the judgments fining plaintiffs and holding them in contempt of court were reversed based upon the Court of Appeal's finding noted above. Incorporated Village of Laurel Hollow v. Laverne, Inc., *supra.*

It is fundamental that the guarantees against unreasonable searches and seizures and against the submission into evidence of unlawfully seized evidence are rights protected by both the Fourteenth Amendment and the Federal Civil Rights Act. Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); People v. Laverne, *supra.*

Further, it is well established that as long as a defendant who abridges a plaintiff's constitutional right acts pursuant to a state or local law which empowers him to commit the wrongful act, an action under the Federal Civil Rights Statute is established. Monroe v. Pape, *supra;* see United States v. Williams, 341 U.S. 70, 71 S.Ct. 581, 95 L.Ed. 758 (1951); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).

Section 1983 of Title 42 of the United States Code, in pertinent part, provides that "Every person who, under color of * * * [state law] * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." As indicated previously, it is not disputed that the entries into plaintiffs' premises were pursuant to local authority.

Defendants urge that the uninvited entrances into plaintiffs' premises and the warrantless searches and seizures conducted thereon did no violence to plaintiffs' constitutional rights and therefore are not actionable. In support of this contention, they argue that their conduct was constitutionally permissible at the time these acts were committed.

The Court in People v. Laverne, *supra,* however, came to an opposite conclusion after specifically finding that the entries were unconsented to and by force of public authority. Even assuming, as defendants suggest, that one of plaintiffs' agents allowed three of the defendants to enter after being informed as to who they were, this is merely a submission to the power of public authority and not a consent. Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948); People v. Laverne, *supra,* 251 N.Y.S.2d at 454, 200 N.E.2d 441.

Predicated on these findings, the State court went on to note that "entry into private premises by a public officer without a search warrant against the resistance of the occupant and in pursuance of the authority of law for the purpose of eliminating a hazard immediately dangerous to health and public safety is constitutionally valid if the purpose be summary or other administrative correction or as a foundation for civil judicial proceedings." People v. Laverne, *supra,* 251 N.Y.S.2d at 454, 200 N.E.2d at 442. In support of this proposition the court cited Frank v. Maryland, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), but went on to note that the case before it was distinguishable from *Frank, supra,* since the instant warrantless searches were conducted specifically to provide a basis for criminal prosecution, and not in order to lead to summary administrative action or civil proceedings for the purpose of protecting public health. People v. Laverne, *supra,* 251 N.Y.S.2d at 455, 200 N.E.2d 441.

The court, of course, reversed the convictions, holding that "searches by * * * public officers of defendant's home without warrants for the purpose of criminal prosecutions * * * [violated] his constitutional rights." People v. Laverne, *supra,* 251 N.Y.S.2d at 455, 200 N.E.2d at 443.

The following year the Appellate Division, relying on the above-quoted holding of the Court of Appeals,

reversed the two contempt orders issued against the plaintiffs and held that just as the Village could not use the unlawfully obtained evidence as the basis for criminal prosecution, it could not make use of it in contempt proceedings, which were quasi-criminal in nature and could have resulted in imprisonment of the plaintiffs. Incorporated Village of Laurel Hollow v. Laverne, *supra.* The Appellate Division also noted that Frank v. Maryland, *supra,* was distinguishable and not controlling.

■ In the face of the above-cited authority, defendants insist that they did not deprive plaintiffs of their constitutionally protected right to be free from unlawful searches and seizures. I find defendants' position untenable. Without considering whether the precise standards for either res judicata, stare decisis or collateral estoppel are applicable herein, I merely hold that as a matter of law, based upon the undisputed facts as I have found them to be, defendants' conduct was not constitutionally permitted at the time the entries were made. Frank v. Maryland, *supra,* and Ohio ex rel. Eaton v. Price, 364 U.S. 263, 80 S.Ct. 1463, 4 L.Ed.2d 1708 (1960), are not authority to the contrary for the reasons set forth by the Court of Appeals in People v. Laverne, *supra.* Defendants' conduct amounted to an unconstitutional search and seizure under the judicial authority then existing, and not because of a retroactive application by this Court of the standards set down by the Supreme Court in Camara v. Municipal Court, *supra.*

Defendants' suggestion that we are not bound by the New York Court's determination in People v. Laverne, *supra,* since a criminal acquittal is not res judicata in a related civil matter, misses the mark. Plaintiffs are not trying to introduce into evidence a trial court's acquittal which, of course, would be inadmissible since it could merely indicate, at best, that the Government had proven its case only by a preponderance of the evidence and not beyond a reasonable doubt. In fact, it is not the plaintiffs' guilt or innocence which the Court deems relevant; rather, it is the sound legal conclusion reached by New York's highest tribunal in determining whether defendants' conduct was lawful and with which this Court agrees.

Having determined that defendants' unlawful conduct deprived plaintiffs of their right to be free from unconstitutional searches and seizures, and hence is redressable under the Civil Rights Act, it remains to be determined if any of the defenses posed by the defendants either prevent plaintiffs from recovering or raise genuine issues of fact which would require this Court to deny plaintiffs' motion for summary judgment. It also remains to be determined if any of the defenses raised on this motion are sufficient in law to grant defendants' motion for summary judgment.

Defendants urge that this action is essentially one in trespass and therefore is time-barred by Section 214(4) of the New York Civil Practice Laws and Rules (hereinafter referred to as "C.P.L.R.") which requires that "an action to recover damages for an injury to property" be commenced within three years from the time the alleged cause of action accrues.

Plaintiffs, on the other hand, contend that this action is one seeking "to recover upon a liability created by statute", as set forth in Section 214(2) of the C.P.L.R., and is thus governed by a six-year period of limitations because the predecessor to this subdivision of Section 214, Section 48(2) of the Civil Practice Act, provided for such a six-year period. It is argued that the Civil Practice Act's six-year period applies despite the C.P.L.R.'s corresponding three-year period for an action "to recover upon a liability created by statute" because the alleged cause of action accrued before the C.P.L.R. became effective and because C.P.L.R. § 218(b) specifically provides that:

"Where a cause of action accrued before, and is not barred when this article becomes effective, the time within which an action must be com-

menced shall be the time which would have been applicable apart from the provisions of this article, or the time which would have been applicable if the provisions of this article had been in effect when the cause of action accrued, whichever is longer."

Plaintiffs cite Swan v. Board of Higher Education, 319 F.2d 56, 60 (2d Cir. 1963), wherein Justice (then Judge) Marshall held the six-year period of limitations applicable in an action brought under the Federal Civil Rights Act because it was a suit " 'to recover upon a liability created by statute.' " Before reaching this conclusion, the court in *Swan* acknowledged that because the Civil Rights Act and the Federal Statutes contain no period of limitations for actions brought under the Act, the applicable period of limitations is the one the states would enforce had an action seeking similar relief been commenced in a court of that state. That is, "[s]ince the Civil Rights Act itself contains no limitation period, the court will look to the most analogous statute of limitations of the state where the cause of action arose." Mulligan v. Schlachter, 389 F.2d 231, 233 (6th Cir. 1968).

Admittedly, in *Mulligan, supra,* the court applied the period of limitations corresponding to that applicable to suits for false imprisonment and malicious prosecution brought within the state, and in Henig v. Odorioso, 385 F.2d 491 (3rd Cir. 1967), cert. denied, 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166 (1968), the state statutes of limitations applicable to suits for false imprisonment, false arrest and malicious prosecution were also applied. In both cases the courts deemed these periods of limitations most analogous to the ones the states would have applied had similar suits been commenced in their courts.

Similarly, Judge Cannella of this court, after approvingly citing *Swan, supra,* held that a four-month statute of limitations barred an action brought by a New York City policeman seeking re-

instatement on the police force and restitution of back pay and lost benefits. Romer v. Leary, 305 F.Supp. 366 (S.D. N.Y.1969). The Judge reasoned that since the patrolman's appropriate state remedy would have been an Article 78 Proceeding, his action was stale because it was not commenced " '*within four months* after the determination to be reviewed [became] final and binding.' " Romer v. Leary, *supra* at 369.

While I do not fundamentally disagree with the conclusions reached in the above-cited cases, I am persuaded by and inclined to follow Judge Dooling's recent opinion in Beyer v. Werner, 299 F.Supp. 967, 969 (E.D.N.Y.1969), wherein he held that a civil rights claim brought under Section 1983 is governed by Section 214(2) of the C.P.L.R. (formerly Section 48(2) of the Civil Practice Act) since it is a claim brought under a federal statute. The Judge specifically rejected the County Attorney's suggestion therein that since the analogous claims were for either assault, battery or false imprisonment, the one-year period of limitations should be applied.

A California District Court reached a similar conclusion holding that the California limitation period most applicable to a claim under Section 1983 was the one with respect to actions to recover for "liability created by statute" and not the ones corresponding to California's civil actions for false arrest and malicious prosecution. Beauregard v. Wingard, 230 F.Supp. 167, 171 (S.D. Cal.1964).

Moreover, I think it obvious that plaintiffs herein seek to redress more than merely an "unlawful trespass" upon their property. The gravamen of the wrong alleged is defendants' deprivation of plaintiffs' constitutionally protected right to be free from unreasonable searches and seizures. This claim is supported by findings of both the New York Court of Appeals and the Appellate Division for the Second Department. People v. Laverne, *supra;* Incorporated Village of Laurel Hollow v.

Laverne, Inc., *supra.* To analogize the deprivation of such significant civil rights to a mere trespass unjustifiably enlarges the scope of a mere common law trespass and correspondingly diminishes the significance of protecting basic rights secured and protected by the Constitution of the United States. This Court will not lend its approval to such an inequitable equation. Just as murder necessarily involves an assault upon the victim, so also will an unlawful entry upon the premises of another in order to conduct an unconstitutional search and seizure consist of a trespass. In neither case, however, is the lesser wrong necessarily analogous to the greater.

■ In view of the foregoing, I hold that since plaintiffs' cause of action is without a New York analogy this Court will apply the statute of limitations applicable to actions seeking recovery "upon a liability created by statute".

■ Defendants further urge that since they were acting in "good faith" they have a good defense to the within action. Alternatively, they suggest that the issue of good faith presents genuine issues of fact which prevent this Court from granting plaintiffs' motion for summary judgment. The viability of their alternative position, of course, depends upon whether or not "good faith" is in law a valid defense to plaintiffs' action. For the following reasons, I find that *good faith is not a valid defense to the instant action* and, therefore, whether or not it presents issues of fact is irrelevant.

In Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court held that there is no requirement that a defendant's action be *willful* in order for him to be liable under Section 1983. Courts were admonished to read that Section with reference to general tort liability under which a man is held responsible for the natural consequences of his actions. Monroe v. Pape, *supra* at 187. Six years later, the Court (perhaps in order to prevent unduly harsh application of the *Monroe* decision) reversed a lower

court ruling that "policemen would be liable in a suit under § 1983 for an unconstitutional arrest even if they acted in good faith and with probable cause in making an arrest under a state statute not yet held invalid", Pierson v. Ray, 386 U.S. 547, 550, 87 S.Ct. 1213, 1216, 18 L.Ed.2d 288 (1967), and held that since "[p]art of the background of tort liability, in the case of police officers making an arrest, is the defense of good faith and probable cause. * * [this] defense * * * is * * * available to them in an action under § 1983." Pierson v. Ray, *supra*, at 556–57, 87 S.Ct. at 1219. Cases decided subsequent to *Pierson, supra,* have continued to apply this standard to police officers making an arrest as long as the common law of the state of the arrest recognized probable cause as a defense to an action for false arrest. Whirl v. Kern, 407 F.2d 781 (5th Cir.), cert. denied, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969); Joseph v. Rowlen, 402 F.2d 367 (7th Cir. 1968); Daniels v. Van De Venter, 382 F.2d 29 (10th Cir. 1967).

In Joseph v. Rowlen, *supra*, 402 F.2d at 370, the Court specifically held that no "specific intent to deprive a person of a federal right" was required in order to be liable under Section 1983 and that even in the case of an arresting officer "good faith" is *not* a defense if the officer made the arrest without a warrant and without probable cause. The Court further went on to hold that where a police officer makes an unconstitutional arrest because made without a warrant and without probable cause, § 1983 imposes a liability on that officer which is recoverable in a federal court. "Additional circumstances coloring the officer's action as flagrant or malevolent are not required." Joseph v. Rowlen, *supra* at 370.

More recently, the Court of Appeals for the Fifth Circuit noted that it had persistently avoided attaching an improper motive requirement to a cause of action under Section 1983. Whirl v. Kern, *supra* 407 F.2d at 787. The Court

conceded that if an element of the wrong committed includes an improper motive, like malicious prosecution for example, then this may be part of the Section 1983 cause of action. But this is because it is required by the common law of torts, and not by the Civil Rights Act. It seems folly to state that a man is "responsible for the natural consequences of his actions", Monroe v. Pape, *supra* 365 U.S. at 187, 81 S.Ct. at 484, only if they are improperly motivated.

Again drawing from the learned opinion of Judge Goldberg in Whirl v. Kern, *supra* 407 F.2d at 788:

> "[T]he unmistakable trend of judicial decisions has been away from the encrustation of the Civil Rights Act with judicially created limitations. Whereas the Act was once rigidly limited to instances of systematic discrimination or physical brutality, in recent years courts have shown themselves increasingly willing to entertain suits under § 1983 where even improper motive is hard to find. * * * [W]e are, like the Seventh Circuit, impressed with the lack of justification for the improper motive requirement. We find no * * * basis for it in the language of the Act or in the Supreme Court decisions. * * *" (Citations and footnotes omitted.)

We turn now to consideration of whether "good faith" is a possible common law defense to the instant action. Assuming (but by no means conceding for the reasons previously indicated) that the closest analogy to the defendants' conduct is a trespass, it is clear that "good faith" would not be an available defense under the common law of this State. O'Horo v. Kelsey, 60 App. Div. 604, 70 N.Y.S. 14, 18 (1901). Admittedly, the actor must intend to commit the act which amounts to the trespass, or results in the damage, but it is no defense that he did not intend to commit a trespass, or that he didn't know that his act constituted a trespass. In fact, he may be completely free of

moral fault—he need only intend to perform that act which results in the damages sustained. Socony-Vacuum Oil Co. v. Bailey, 202 Misc. 364, 109 N.Y.S.2d 799, 801–802 (Sup.Ct.1952).

As another affirmative defense, it is urged that Section 341(1) of the Village Law, Consol.Laws, c. 64, and Section 50–e of the General Municipal Law, Consol.Laws, c. 24, require that a notice of claim be served upon the defendants herein and the Village within 90 days after the alleged claim arose.

It is well settled that Section 50–e of the General Municipal Law creates no obligation to serve notice but merely prescribes the manner in which notice, if required, shall be given. Harrigan v. Town of Smithtown, 54 Misc.2d 793, 283 N.Y.S.2d 424 (Sup.Ct.1967). This is also clear from the plain language of subdivision 1 of section 50–e which, in pertinent part provides that "where a notice of claim is required by law as a condition precedent to the commencement of an action * * * the notice shall comply with the provisions of this section and it shall be given within ninety days after the claim arises."

Section 341(1) of the Village Law, in pertinent part, provides that "No action shall be maintained against the village for a personal injury or an injury to property alleged to have been sustained by reason of the negligence or wrongful act of the village or of any officer, agent or employee thereof, unless a notice of claim shall have been made and served in compliance with section fifty-e of the general municipal law."

Plaintiffs admit that no notice was served, but contend that none was required because: 1) the within action is not against the Village; and 2) to require such notice would result in an unlawful limitation by the state upon the federal court's jurisdiction to hear and determine a federal claim.

■ Appellate authority in this State has unequivocally held that when there exists no statutory duty requiring a municipality to indemnify an officer

for his allegedly wrongful conduct there is no necessity for service of a notice of claim upon that municipality as long as it is not made a party to the action. O'Hara v. Sears Roebuck & Co., 286 App.Div. 104, 142 N.Y.S.2d 465, 467 (1955). In a more recent case, a similar conclusion was reached by the Appellate Division. Widger v. Central School Dist. No. 1, 20 App.Div.2d 296, 247 N.Y.S.2d 364 (1964).

No basis for indemnity has been pleaded and the Court has found none. Defendants' contention that the doctrine of *respondeat superior* provides a basis for indemnity is without merit. *Respondeat superior* would only be applicable in the instant suit if the Village were already a party defendant. That is, predicated on the above-cited theory, the Village, as employer of the defendants, could no doubt have been sued and made to respond in damages, had it been served with a timely notice of claim. *Respondeat superior* therefore involves the employer's or master's liability to third persons for damages caused by the wrongful acts of its employees, and not the wrongdoing employee's possible rights of indemnity from the employer.

Plaintiffs, as a further basis to extricate themselves from the notice requirement of Section 50–e, urge that application of this provision would unlawfully limit this Court's jurisdiction over a well pleaded federal claim.

■ I find plaintiffs' position well taken, especially since this Court is required to abide by the "familiar doctrine that the prohibition of a federal statute may not be set at naught, or its benefits denied, by state statutes or state common law rules." Sola Elec. Co. v. Jefferson Elec. Co., 317 U.S. 173, 176, 63 S.Ct. 172, 173, 87 L.Ed. 165 (1942); Beauregard v. Wingard, *supra* 230 F. Supp. at 173.

Well pleaded claims under the Civil Rights Act are typical examples of situations wherein "the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by the federal law * * * rather than by local law." Sola Elec. Co. v. Jefferson Elec. Co., *supra*, 317 U.S. at 176, 63 S.Ct. at 174.

Five years after the Court's decision in *Sola, supra*, Mr. Justice Frankfurter noted that "where resort is had to a federal court not on grounds of diversity of citizenship but because a federal right is claimed, the limitations upon the courts of a State do not control a federal court sitting in the State." Angel v. Bullington, 330 U.S. 183, 192, 67 S.Ct. 657, 662, 91 L.Ed. 832 (1947); accord, Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed.2d 743 (1946).

Supreme Court rulings in a fairly recent admiralty action also lend support to plaintiffs' position. In Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143 (1953), the Court refused to apply state law which would completely deny recovery to a seaman guilty of contributory negligence, solely because the respondent's right of recovery was bottomed on federal and not state law. The Court noted that "[w]hile states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress. * * *" Pope & Talbot, Inc. v. Hawn, *supra* at 409–410, 74 S.Ct. at 205. A recent decision of the New York Supreme Court supports a similar conclusion. Rogers v. City of New York, 46 Misc.2d 373, 259 N.Y.S.2d 604, 608 (1965).

■ Since the plaintiffs herein likewise seek redress for the deprivation of a federally created right, this Court is constrained to hold the New York notice of claim requirement inapplicable insofar as it serves to deprive the plaintiffs of a substantial right defined and created by Congress, embodied in the Federal Civil Rights Act, and protected by the Constitution of the United States.

The final issue for consideration is defendants' unbriefed contention that

plaintiffs' action should be dismissed because it is res judicata. Although defendants have not pursued this issue, the Court will not deem it abandoned since if this theory were correct it could defeat the entire action herein.

The prior action ostensibly relied upon by defendants is Laverne v. Corning, commenced in the Nassau County Supreme Court (Index No. 8732/1964) against two of the defendants herein and another defendant not a party to the instant action.

Careful reading of the complaint and the decision rendered in that action reveals that: 1) only one of the present plaintiffs was a party to the prior action; 2) only two of the instant defendants were party defendants to the prior action; and, most important, 3) the prior complaint essentially charged the defendants with conspiring to willfully and maliciously injure the plaintiff by subjecting him to unwarranted prosecution, and forcing him to leave the Village. (The decision and complaint in the prior action are attached as Exhibits C and D to plaintiffs' notice of motion, dated January 16, 1970.)

Without passing on whether the Court's decision in the prior action would have any bearing on plaintiffs' conspiracy claim under the Civil Rights Act, it seems clear that that part of plaintiffs' suit which seeks to redress injuries sustained as a result of being deprived of their right to be free from unconstitutional searches and seizures, presents a separate and distinct cause of action wholly unrelated to anything that was before the Nassau County Supreme Court.

Although defendants' unconstitutional acts may have been alleged in the prior complaint in order to substantiate the conspiracy charge, these acts are central to, and in fact the basis of, the present action. The complaint in the state action alleges that the defendants therein "conspired * * * to cause plaintiff to be arraigned on informations and tried in criminal proceedings * * * for allegedly violating the Building Zone Ordinance of that Village." (Complaint ¶ 8.) Paragraph 9 of the same complaint alleges that in furtherance of the conspiracy the illegal search was conducted in order to procure evidence of the alleged violations.

The decision in that action also supports the conclusion that the prior action was essentially one seeking recovery for an alleged conspiracy to prosecute plaintiff, and force him to leave the Village. The second sentence of the opinion, in pertinent part, reads: "The complaint alleges that the defendants * * * conspired to cause the plaintiff to be arraigned tried and convicted in a criminal proceeding. * * *" The next to last sentence of the opinion concludes that: "A reading of the entire complaint in its most favorable light fails to reveal sufficient facts upon which plaintiff can predicate his action for conspiracy."

 Based upon the foregoing, I think it obvious that since both actions are governed by different legal theories, the state court judgment is not res judicata as to the instant action. The Nassau County Supreme Court was never presented with, and certainly did not decide *sua sponte*, the issue of defendants' liability for compensatory damages under the Federal Civil Rights Act for violating plaintiffs' constitutional rights.

Accordingly, and for the foregoing reasons, plaintiffs' motion for summary judgment is granted and defendants' motion is in all respects denied.

Submit order on notice in accordance herewith.

### SUPPLEMENTAL MEMORANDUM

On July 6, 1970, this Court handed down an opinion granting plaintiffs summary judgment, interlocutory in character, on the issue of defendants' liability for compensatory damages. Liability was predicated upon this Court's finding that the defendants, while acting in their official capacities as officers of the Incorporated Village of Laurel Hollow, unlawfully entered

upon plaintiffs' premises and conducted searches and seizures thereon in violation of plaintiffs' constitutional rights protected under the Fourth and Fourteenth Amendments to the Constitution.

Pursuant to the Court's instruction, on July 17, 1970 plaintiffs submitted an order in accordance with the opinion. Ten days later, defendants submitted a counter-order, in all respects identical to plaintiffs' order except that it included a provision pursuant to 28 U.S.C. § 1292(b) requesting the right to petition the Court of Appeals for permission to appeal this Court's interlocutory decision. Defendants' counter-order further included a stay of the instant proceedings until the Court of Appeals determined defendants' application.

Section 1292(b) of Title 28 of the United States Code, in pertinent part, provides:

> "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order."

By the terms of said statute, permission to seek an interlocutory appeal should be withheld if the district court's opinion does not depend upon "a controlling question of law as to which there is substantial ground for difference of opinion" and unless an immediate appeal would materially advance termination of the litigation. While the issues and defenses raised in the instant action presented some unique issues relative to liability under the Federal Civil Rights Act, 42 U.S.C. § 1981 et seq., the controlling questions of law seemed compelled by the underlying facts as this Court found them to be. Thus,

after reconsidering the numerous legal issues involved, I am not persuaded that a *substantial ground* for a difference of opinion exists.

Further, since the only issue remaining is the determination of the quantum of damages to be awarded plaintiffs,[1] which apparently will not involve expensive and protracted litigation, there is little reason to believe that permitting an appeal from this Court's decision will *"materially* advance the ultimate termination of the litigation".

 Accordingly, and for the foregoing reasons, the Court will sign the order submitted by plaintiffs on July 17, 1970, and defendants' request for permission to seek leave of the Court of Appeals to appeal said order is denied.

It is so ordered.

---

1. This is the only issue remaining with respect to the first two counts of plaintiffs' complaint.