Edward M. O’Gorman, J.
The Building Inspector of the Town of Monroe has heretofore petitioned this court for an order pursuant to CPLR 3102 (subd [c]) permitting him to inspect certain premises located in the Monwood Realty Corporation subdivision in that township. The inspection is to enable him, if the results of the inspection should require, to commence legal action to bring about the correction of the aforesaid violations. The court, being satisfied by affidavit and testimony under oath that the building inspector has reason to believe that in said premises there exist certain violations of the zoning ordinance of the township, granted the order subject to certain conditions and limitations on September 1, 1976. Thbreafter, two motions were made seeking protective orders preventing such inspection.
One of these motions was made on behalf of the owners of 18 private residential premises and the second was made on behalf of the owners of certain garden apartments in said development. Service of the notices of motion for a protective order stayed inspection of the premises until such time as the issues raised by those motions have been decided by this court.
The building inspector in his capacity as such and as engineer of the Town of Monroe is the officer charged with the responsibility for the enforcement of the obligations of property owners in the township as established by the terms of the zoning ordinance. Pursuant to subdivision 2 of section 268 of the Town Law and section 22-D of the zoning ordinance, the *1011 building inspector is empowered to institute any appropriate action or proceeding to prevent the unlawful construction, alteration, conversion or use of any premises, and to correct or abate such violation. By the provisions of section 32-a of the Town Law, the town engineer is empowered to enter upon any lands, public or private, within the town without hindrance for the purpose of making surveys, examinations or investigations.
The building inspector now advises the court, and the moving papers establish, that the owners and occupants of the premises in question have refused to grant him voluntary access to said premises for the purpose of permitting him to discharge his responsibilities under the zoning law. The owners of said premises contend that the relief requested violates the provisions of the Fourth Amendment to the United States Constitution; that it violates the privilege of the respective owners against self incrimination; that an inspection of the premises is unnecessary in view of the sworn testimony of the building inspector, and that this court, having previously declined to issue a search warrant pursuant to the Criminal Procedure Law, may not now consistently authorize the requested inspection.
In People v Laverne (14 NY2d 304) the Court of Appeals considered the right of a building inspector to enter premises to make an inspection. In that case the building inspector had made his inspection without first obtaining authorization by warrant from a court. In that case the court stated the probability that an entry into private premises by a public officer without a search warrant against the resistance of the occupant and in pursuance of the authority of law, for the purpose of eliminating a hazard immediately dangerous to health and public safety, was constitutionally valid if the purpose of the entry was for summary or other administrative correction or as a foundation for civil judicial proceedings. The court based its statement on Frank v Maryland (359 US 360) and Eaton v Price (364 US 263).
The court distinguished such a search from the search which was the basis of the Laverne prosecution. In this connection the court stated (p 308): These are quite different things and, although we reserve until an appropriate case may come here the validity of a search utilized for civil action, we are of opinion that the searches by the public officers of defendant’s home without warrants for the purpose of crimi *1012 nal prosecutions were to that extent in violation of his constitutional rights.”
The United States Supreme Court once again returned to a consideration of this general question in Camara v San Francisco (387 US 523), and held that administrative searches without a warrant involved significant intrusions upon interests protected by the Fourth Amendment, and that such searches when authorized and conducted without a warrant procedure lacked the traditional safeguards which the Fourth Amendment guarantees to the individual. However, the court did point out that inspections such as the type involved in this case are of a unique character and require some accommodation between public need and individual right. The court pointed out (p 535) that: "Unlike the search pursuant to a criminal investigation, the inspection programs at issue here are aimed at securing city-wide compliance with minimum physical standards for private property. The primary governmental interest at stake is to prevent even the unintentional development of conditions which are hazardous to public health and safety. Because fires and epidemics may ravage large urban areas, because unsightly conditions adversely affect the economic values of neighboring structures, numerous courts have upheld the police power of municipalities to impose and enforce such minimum standards even upon existing structures. In determining whether a particular inspection is reasonable — and thus in determining whether there is probable cause to issue a warrant for that inspection — the need for the inspection must be weighed in terms of these reasonable goals of code enforcement.”
In this connection the court quoted the following (p 537): " 'Time and experience have forcefully taught that the power to inspect dwelling places, either as a matter of systematic area- by-area search or, as here, to treat a specific problem, is of indispensable importance to the maintenance of community health; a power that would be greatly hobbled by the blanket requirement of the safeguards necessary for a search of evidence of criminal acts. The need for preventive action is great, and city after city has seen this need and granted the power of inspection to its health officials; and these inspections are apparently welcomed by all but an insignificant few. Certainly, the nature of our society has not vitiated the need for inspections first thought necessary 158 years ago, nor has experience revealed any abuse or inroad on freedom in meet *1013 ing this need by means that history and dominant public opinion have sanctioned.’ 359 U.S. at 372.”
The court in Camara (supra), went on to point out (p 539) that the warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest, the court stating that if a valid public interest justifies the intrusion, then there is probable cause to issue a suitably restricted search warrant.
This court has found no case, and none has been called to its attention, which would indicate that an inspection by a duly constituted civil officer in the performance of his duties concerning public health and safety, and being first authorized by a court having jurisdiction, would be offensive to the Fourth Amendment of the Constitution or section 8 of the Civil Rights Law.
The practical problem presented in this connection is the failure of the Legislature thus far to prescribe the form of and provide the machinery for obtaining a civil warrant authorizing inspections for civil administrative purposes. This is not remarkable, in view of the rarity of cases in which private citizens have resisted the normal assertion of public authority to inspect. In Frank (359 US 360, 366, supra), the owner’s refusal was described as a "rarely voiced denial of any official justification for seeking to enter his home.” Such a warrant has in fact heretofore been issued by Mr. Justice Kane, then of the Albany County Supreme Court (Blabey, See and Camara: Their Far-Reaching Effect on State Regulatory Activities and The Origin of the Civil Warrant in New York, 33 Albany L Rev 64, 80).
However, the present case differs substantially from the cases which have heretofore been discussed. The building inspector in this case is not seeking to make an inspection of residential premises without having first demonstrated probable cause; he is not seeking to examine these premises without prior court authorization; and he has not called upon the court to fashion some novel process in order to authorize the inspection. He has, instead, chosen a. procedure authorized by the Legislature and surrounded by safeguards which exceed the protection afforded the homeowner by the procedure for obtaining a search warrant. He has elected to correct any violations of the zoning ordinance of the township by civil proceedings. He has adopted a procedure (CPLR 3102, subd [c]) already established by the Legislature as a means of obtaining *1014 a court order permitting discovery and inspection. By the adoption of this procedure he has elected to subject himself to the more stringent requirements of those procedures. In accordance therewith he must show the court in advance that he has reason to believe that violations of the zoning ordinance do exist in the premises to be inspected, which places a greater burden upon him than he would have in order to obtain a civil search warrant (see Camara, supra, p 538).
This procedure also grants to the property owner the opportunity to obtain a stay of any such inspection by merely making a motion for a protective order (CPLR 3103, subd [b]), and no inspection may be made until the court has had an opportunity to hear both sides. By contrast, a search warrant may be obtained without notice to the party to be searched.
It seems clear, therefore, that the building inspector has the right to make the inspections which he seeks, after obtaining a court order pursuant to the provisions of CPLR 3102 (subd [c]), which afford even greater safeguards to the homeowner than would an application for a search warrant.
The argument that the court, having heretofore declined to issue a criminal search warrant, is now precluded from considering the application for the order requested is not well taken. The provisions of CPL 690.05 which govern the issuance of search warrants in criminal cases do not by their terms apply to an application for a civil administrative remedy, and the application for such a criminal search warrant was denied on that ground.
The argument that the granting of the order to inspect in this case impinges on the homeowners’ right not to incriminate themselves is also inapplicable here. There is no question in this case of testimonial compulsion on the part of the individual homeowners (Richardson, Evidence [10th ed], § 526), and no such privilege is available to the corporate owner under any circumstances (Richardson, supra, § 527).
Contrary to the argument that the fact that the building inspector has reasonable grounds to suspect that violations of the zoning ordinance have been committed in the various premises precludes his right to this order of inspection, it should be pointed out that the demonstration of such knowledge is, as a further safeguard, a necessary condition precedent to the issuance of the order (see Stewart v Socony-Vacuum Oil Co., 3 AD2d 582, 583; 3A Weinstein-Korn-Miller, NY Civ Prac, par 3102.14).
*1015 For the foregoing reasons, the motion on behalf of the owners and lessees of the 18 residential dwellings and the motion on behalf of Monfield Homes, Inc. seeking a protective order staying the inspection herein previously ordered, will be denied.