Meyer, J.
(dissenting in part). While I agree that plaintiffs are not entitled to reimbursement for the fees of their substituted attorneys or for the fees incurred in prosecuting the present action, I conclude that they are entitled to reimbursement from the village for the reasonable value of the expenses incurred by them in defending the Laverne action, for which they have not already been reimbursed by the award of costs to them in that action. The premises for that conclusion are: (1) since plaintiffs acted in their official capacity and in good faith they were entitled to be defended at the expense of the village, (2) the village had the authority to and did in fact provide plaintiffs with a defense by enlisting the County Attorney pursuant to applicable statutory provisions, (3) having been provided with counsel by the village, plaintiffs could not, under the circumstances of this case, without authorization from the village, substitute new attorneys in place of the County Attorney, (4) though in consequence of that unauthorized substitution plaintiffs cannot obtain reimbursement for the fees of the substituted attorneys, they are not barred from reimbursement for the reasonable value of printing and other *356 similar expenses which would have been incurred in defending the action had there been no substitution.
A somewhat more complete recital of the background than is set forth in the majority opinion may facilitate understanding of what is at issue. The present action is the latest episode in a litigation saga that began in 1950 when the Incorporated Village of Laurel Hollow brought an action to enjoin Erwine and Estelle Laverne from using their residentially zoned property for commercial purposes. The injunction was granted and sustained on appeal (Incorporated Vil. of Laurel Hollow v Laverne Originals, 283 App Div 795, affd 307 NY 784). On the basis of a neighbor’s complaint concerning the number of trucks entering and leaving the Laverne premises and the section of the Village Building Zone Ordinance (article 10, § 10.1) which empowered him "to enter any building or premises at any reasonable hour”, plaintiff Johnson, the then building inspector of the village, entered the Laverne premises on July 24, 1962 and saw equipment and materials that led him to believe the injunction was being violated. He reported these facts to the village board which, with the advice of the Village Attorney, authorized him and plaintiff Dubosque, the Deputy Mayor, to make another inspection. That inspection, in which plaintiff Corning, the Mayor, joined, was made on October 18, 1962, and a third inspection by the building inspector was made on December 18, 1962. Contempt proceedings, an action for civil penalties and a criminal proceeding for violation of the zoning ordinance followed. On Erwine Laverne’s appeal from his conviction on the criminal charge, we held the inspections unlawful, distinguishing Frank v Maryland (359 US 360), which had upheld a warrantless inspection for health code purposes, and dismissed the information (People v Laverne, 14 NY2d 304). Thereafter the civil actions brought by the village against the Lavernes were also dismissed (Incorporated Vil. of Laurel Hollow v Laverne Originals, 17 NY2d 900).
The Lavernes then brought an action in the Federal court against the present plaintiffs, based on the Civil Rights Act (US Code, tit 42, § 1983).[1] In that action, in which the present *357 plaintiffs were represented by the County Attorney of Nassau County, summary judgment was granted the Lavernes (316 F Supp 629), but after the Second Circuit’s decision in Bivens v Six Unknown Named Agents of Fed. Bur. of Narcotics (456 F2d 1339), holding a good faith reasonable belief in the lawfulness of a search to be a defense in a similar action, a motion to vacate was made (354 F Supp 1402) and, based on a jury finding that defendants (present plaintiffs) had acted in good faith, judgment was entered for defendants (376 F Supp 836). That judgment was ultimately affirmed on appeal (522 F2d 1144).
The complaint in the present action alleges that the acts which formed the basis for the Federal action were performed by plaintiffs in the exercise of their duties as officers and agents of the village and in good faith, that they were represented in the Federal action by the County Attorney, that on August 11, 1970 (about a month after the Federal court granted summary judgment against them) plaintiffs consented to the change of their attorney from the County Attorney to a private law firm, which represented them thereafter until the conclusion of the Federal action, that they kept the village informed of the proceedings in the action, and that plaintiffs incurred substantial costs and disbursements for legal fees, printing and court costs, for which the village has refused to reimburse or indemnify plaintiffs. The answer of the village admits that plaintiffs purported to make the inspections in their capacities as village officials and performed them in good faith and admits its refusal to reimburse or indemnify plaintiffs, but alleges that the village is prohibited by section 1 of article VIII of the New York Constitution and by the Village Law from reimbursing plaintiffs and that plaintiffs, in violating the Lavernes’ constitutional rights, acted outside the scope of their authority. Plaintiffs’ motion for summary judgment was granted by Special Term and the cross motion of the village was denied. On appeal, the Appellate Division reversed, on the ground that without express authorization plaintiffs were not entitled to reimbursement, denied plaintiffs’ motion for summary judgment and granted defendant village’s cross motion (64 AD2d 918).
*358 I agree that village officials and employees are not entitled to counsel of their choice unless the village improperly refused to provide an attorney to defend them and even then can be reimbursed only to the extent that the trier of facts finds both the choice made and the fees charged to be reasonable. It is, I also agree, a necessary corollary of that rule that such officials cannot, without authorization by village officials or the unreasonable refusal of them to accept a substantial reason for substituting attorneys after the necessity for doing so has been brought to their attention, substitute an attorney of their own choosing for one provided by the village. I cannot, however, accept the majority’s characterization of plaintiffs’ acts as personal, nor the conclusions it deduces therefrom that there is no statutory authority for employment by the village of counsel to defend plaintiffs and that there is a consequent violation of the constitutional prohibition against making a gift of public funds.
I
My disagreement with the majority’s basic premise that plaintiffs are not entitled to a defense at the expense of the village rests primarily on considerations of policy, but involves also differences concerning prior holdings of this court and the interpretation of the Constitution (art VIII, § 1).
I start with the fundamental proposition that the law implies an obligation on the part of a principal to indemnify his agent for the expense of defending a lawsuit brought for the acts of the agent done in the good faith performance of his duties. That principle, recognized by this court for more than 100 years (Howe v Buffalo, N. Y. & Erie R. R. Co., 37 NY 297; see People ex rel. Van Keuren v Board of Town Auditors of Town of Esopus, 74 NY 310 [involving a town employee]; Restatement, Agency 2d, § 438, subd [2]; § 439, subds [c], [d]), entitles the agent to indemnity for the expenses of a successful defense of actions brought by third persons acting under the mistaken belief that the agent’s conduct was wrongful (Restatement, Agency 2d, § 439, Comments g, h) and authorizes recovery by the agent even after termination of his agency with respect to obligations incurred during it (Restatement, Agency 2d, § 438, Comment f; see, also, id., § 451, Comment d).
The basis of the rule is the conception that it is only fair that the principal should bear the loss for acts performed by *359 the agent in the principal’s business (Restatement, Agency 2d, § 438, Comment a).[2] It is, moreover, a rule generally applied to municipal officers and employees, even though it turns out that they may have exceeded their legal authority, provided they acted in good faith (see Levine v Miteer, 16 AD2d 990; 3 McQuillin, Municipal Corporations [3d ed rev], § 12.137, pp 575-576; 1 Dillon, Municipal Corporations [5th ed], § 307, pp 563-564). With respect to municipal officers and employees, however, the policy behind the rule is broader than that for agents generally.
The policy considerations involving governmental employees are three. Though stated in the context of immunity from liability rather than indemnity for expenses, they are most succinctly articulated in two recent decisions of the Supreme Court, Scheuer v Rhodes (416 US 232) and Wood v Strickland (420 US 308).[3] Scheuer states the first two (416 US, at p 240) as follows: "(1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good” and Wood, the third (420 US, at p 320, see, also, p 331): "The most capable candidates * * * might be deterred from seeking office if heavy burdens upon their private resources from monetary liability were a likely prospect during their tenure.” In this day of ever expanding litigation against public officials and employees the public interest in obtaining capable officials, who will act effectively in enforcing the laws, as these plain *360 tiffs sought to do, mandates that such officials and employees be reimbursed for fees and expenses incurred in defending themselves with respect to acts undertaken officially and in good faith. The injustice and chilling effect of a contrary holding requires that its source be the clearest constitutional or statutory proscription.
The majority’s holding rests on no such foundation. Its bases are three: defending oneself against charges of misconduct at one’s own expense is a risk traditionally associated with acceptance of public office (at p 353); the Constitution prevents compensating a person who performs an act which the government had no duty to undertake (at p 353); the possibility of extravagance or collusion require that, absent extraordinary circumstances, the retainer of an attorney be authorized by statute or appropriate resolution (at pp 351-352).
The difficulty with the first is that it rests on the rhetoric of the decisions cited to support it and pays too little attention to their holdings. The "misconduct” of the present plaintiffs, if their acts in furtherance of the declared zoning policy of the village can be so characterized, was of a totally different character than that involved in the cited cases, which was such as to warrant dismissal from office or worse. Thus, Matter of Chapman v City of New York (168 NY 80) involved fees and expenses of a police officer sought to be disciplined and removed from office; Matter of Kilroe v Craig (238 NY 628), an Assistant District Attorney indicted on charges of conspiracy in conducting certain prosecutions; Matter of Guarino v Anderson (259 NY 93), police officers indicted for failing to report the maintenance of a public nuisance; Leo v Barnett (41 NY2d 879), town assessors who having been removed from office, successfully sued for reinstatement. One can agree with the statement in the Appellate Division opinion in that case, on the basis of which this court affirmed, that "at common law the public officer contested his ouster at his own expense, no matter what might be the baseless character of the attack” (48 AD2d, at p 465), without doing violence to the rule argued for in this dissent that when the action defended seeks to impose liability for the performance of an official act, as distinct from ouster from or reinstatement in office, a public official is entitled to reimbursement for reasonable fees and expenses reasonably incurred. Only Buckley v City of New York (264 App Div 116) sought to apply Matter of Chapman’s *361 holding to the defense of a civil action for official acts and in light of the trial court’s holding that plaintiff Buckley, chamberlain of the city, was not an agent of the city, the recital of that holding in the State reporter’s memorandum accompanying our affirmance, and the absence of any reference to the Appellate Division’s reasoning in that memorandum, our no opinion affirmance (289 NY 742), is at best equivocal.
The constitutional argument appears no better founded. Matter of Guarino v Anderson (259 NY 93, 95-96, supra) cited at page 353 for the proposition that the Constitution prevents compensating a person who performs an act the government had no duty to undertake does not sustain the broad proposition for which it is cited. The act there referred to was of the same limited character noted in the preceding paragraph of this dissent, i.e., "a public officer in defending himself against false accusations”. It is inconsistent too with the recognition in Gavin v Board of Supervisors of Rensselaer County (221 NY 222, 227) that "There is no greater [constitutional] objection to the payment of the costs and expenses incurred by a public officer in defending himself against charges of misconduct than there is to the payment of the costs and expenses incurred in the prosecution of such charges”.[4] It is, moreover, wholly inconsistent with the admission by the village in its answer that plaintiffs purported to perform the acts of which the Lavernes complained in their capacities as agents of the village and in doing so acted in good faith.
*362 II
The third basis — the necessity for authorization pursuant to statute or resolution — is no greater obstacle for there can be no question on the facts of this case that statutory authorization for employment of counsel for plaintiffs at village expense existed, and that the County Attorney’s representation of plaintiffs came about pursuant to such statutes. Subdivision 11 of section 89 of the Village Law in effect at the time that the Laverne action was brought provided for the employment of a Village Attorney, but further provided that: "The board also may, from time to time as necessity requires, employ an attorney, other than the one regularly employed, to perform any special service for the village, and pay a reasonable compensation therefor, and the expense may be a legal charge against the village.”[5] Not only was the village authorized to retain special counsel by that section, but also the County Attorney of Nassau County was authorized by statute to act in such a capacity. Section 1102 of the County Government Law of Nassau County, in effect since 1938, provides that: "The county attorney * * * upon the request of the governing body of any * * * village * * * may act as the legal advisor or representative thereof on such terms as may be agreed upon between the county executive and the said governing body.” The complaint in the present action annexes as an exhibit the answer filed in the Laverne action and the answer of the village in this action concedes that the paper annexed was the answer filed. That answer expressly alleged in its first and third separate defenses that defendants in the Laverne action were officers or agents of the village and that the acts complained of were committed in the exercise and discharge of their official duties and with the consent and permission of the village. While the papers on the instant motion do not expressly state that the County Attorney undertook defense of the Laverne action on plaintiffs’ behalf under that provision, it is clear from the answer he filed that his defense of them was authorized by that section (cf. Levine v Miteer, 16 AD2d 990). Even if that were not so the presumption of regularity (Richardson, Evidence [10th ed — Prince], § 72) would require the village, as the opposing party in this action, to come *363 forward with proof to rebut that conclusion (People v Richetti, 302 NY 290, 298).
Thus the village both had statutory authority to employ counsel in defense of its employees and officials, the present plaintiffs, and in fact did so. That we are not told the terms agreed upon between the County Executive and the village is of no moment on the present appeal, since plaintiffs do not seek reimbursement for fees paid or payable for the County Attorney’s services, it cannot be presumed that the County Executive agreed to the payment of out-of-pocket printing and other disbursements on behalf of village officials from county funds, and, in any event, the phases of the litigation at which such expenses are normally incurred occurred after substitution of the private firm for the County Attorney.
Ill
The issue, then, is not whether the village had an obligation to provide a defense, but whether, it having done so, plaintiffs were at liberty to employ at the expense of the village an attorney different than the village provided. While there may be cases in which the withdrawal, disability or incompetence of the attorney provided by a municipality requires the employment of a substitute attorney (see, e.g., Cahn v Town of Huntington, 29 NY2d 451 [disability]), a municipal official for whom counsel has been provided generally has no authority on his own judgment and without the approval of the municipality to make a substitution at its expense (see People ex rel. Van Keuren v Board of Town Auditors of Town of Esopus, 74 NY 310, supra; Matter of Kay v Board of Higher Educ., 260 App Div 9, app den 260 App Div 849, 912; Restatement, Agency 2d, § 438, Comments b, e). As the Supreme Court of Minnesota put it in Adams v North Range Iron Co. (191 Minn 55, 59), in an analogous situation: "After some search we have found no case where, in a suit by a third party against both the principal and the agent in which the principal employed competent attorneys to defend both, it was held that the agent was nevertheless entitled to employ his own separate attorney and recover the reasonable attorney’s fees from the principal.” Neither in the complaint nor in their affidavits on this motion do plaintiffs indicate the reason for the substitution. While it may have been that they lost confidence in the County Attorney after the Lavernes were granted summary judgment, there is nothing to suggest that substitution rather than *364 reargument or appeal[6] was the required or even the appropriate course. Having chosen for reasons of their own to employ a different attorney than that employed for them by the village, plaintiffs foreclosed themselves from recovering from the village the fees charged by the substitute attorneys. [7]
IV
They did not, however, by that action foreclose themselves from recovering their reasonable printing disbursements and other reasonable expenses, which the village would have been required to pay even if the County Attorney continued to represent plaintiffs (see Sniffen v City of New York, 4 Sandf 193, 198), since those expenses were essential to the ultimate success of plaintiffs as defendants in the Federal action. Since the village by employing the County Attorney as counsel for plaintiffs may reasonably be deemed to have agreed to pay those expenses (see Judson v City of Niagara Falls, 140 App Div 62, 66, affd 204 NY 630; Kramrath v City of Albany, 127 NY 575, 581), plaintiffs are entitled to recover from the village such part of those expenses as they have not already recovered from the Lavernes as costs in the Federal action and as Special Term on assessment of damages finds reasonably incurred.
V
While I disagree with so much of the majority holding as foreclosed plaintiffs’ recovery of their expenses other than fees, I agree that they are not entitled to recover fees incurred by them for the prosecution of the instant action. It is well settled that attorneys’ fees are merely incidents of litigation and, therefore, not compensable in the absence of an express statutory or contractual provision therefor (Equitable Lbr. Corp. v IPA Land Dev. Corp., 38 NY2d 516; City of Buffalo v Clement Co., 28 NY2d 241; 1 Speiser, Attorneys’ Fees, § 13:1). The necessary corollary of that rule is that neither a statutory nor a contractual provision for the payment of counsel fees includes counsel fees in the suit to collect those fees, absent *365 specific language to that effect (Mighty Midgets v Centennial Ins. Co., 47 NY2d 12; Grimsey v Lawyers Tit. Ins. Corp., 31 NY2d 953; Doyle v Allstate Ins. Co., 1 NY2d 439; Swiss Credit Bank v International Bank, 23 Misc 2d 572 [Steuer, J.]). Since plaintiffs suggest no such basis for their claim, they are entitled to no more than such court costs and disbursements as the CPLR (CPLR 8101, 8301) allow them in this action (see Restatement, Agency 2d, § 438, Comment k).
Accordingly, the order of the Appellate Division should be modified to provide that defendant’s cross motion for summary judgment is granted to the extent of dismissing so much of the complaint as seeks attorneys’ fees for defending the underlying action or prosecuting the present action but otherwise denied, that plaintiffs are granted partial summary judgment for their unreimbursed expenses in the underlying action, the matter is remitted to Special Term for assessment of damages, and the Appellate Division order should otherwise be affirmed.
Judges Gabrielli, Fuchsberg and Greenblott* concur with Chief Judge Cooke; Judge Meyer dissents in part and votes to modify in a separate opinion in which Judges Jasen and Jones concur.
Order affirmed.

. As the majority opinion notes, the action was against the plaintiffs individually and not against the village because Monell v New York City Dept. of Social Servs. (436 US 658) had not yet overruled the holding of Monroe v Pape (365 US 167) that a muriicipality could not be sued under the act. While Monell holds that a municipality cannot be held liable under section 1983 solely on a respondeat superior basis, it *357 recognizes municipal liability for acts which "may fairly be said to represent official policy” (436 US, at p 694). In view of the quoted provision of the ordinance, the advice of the Village Attorney and the authorization by the village board, there can be little question that the inspections for which the Lavernes sued represented official policy.

. The majority equates plaintiffs and the village and suggests (at p 353) that "there is no principal involved to whom the plaintiffs may look for reimbursement”. The suggestion is contradicted by the very Restatement (Agency 2d, § 14 C) section cited for Comments a and b to that section distinguish between the board of directors of a corporation and an individual director who is also appointed an officer, in which case "he is necessarily an agent, and normally a general agent, of the corporation, since he acts on its behalf and subject to its control exercised through the board of directors”.

. Similar policy statements by this court may be found in Stukuls v State of New York (42 NY2d 272) and go back at least to Chancellor Kent’s statement in Yates v Lansing (5 Johns 282, 292, affd 9 Johns 395) that the "vigorous and independent administration of justice” required that Judges be exempt from civil suit, and in his quotation (5 Johns, at p 296) from a Connecticut decision that: "No man would accept the office of judge, if his estate were to answer for every error of judgment, or if his time and property were to be wasted in litigations with every man whom his decisions might offend”.

. It is not necessary, since as pointed out in Part II below there is existing statutory authority, to meet the suggestion made in both the majority opinion and in Guarino that prospective but not retroactive authorization passes constitutional muster. It may be noted, however, that that suggestion appears to conflict with the moral obligation cases, such as Farrington v State of New York (248 NY 112); see, also, Seif v City of Long Beach (286 NY 382, 389), which do not require prior legislation, and, indeed, with the wording of the constitutional provision itself which draws no such prospective-retroactive distinction. Whether a gift is made turns not on when an expenditure is authorized but on whether it is for a legitimate public purpose: here, the furtherance of village zoning purposes through good faith performance of duty and the encouragement of qualified persons to seek village office or employment without fear of personal liability for good faith performance of official duties (cf. Board of Educ. v Associated Teachers of Huntington, 30 NY2d 122, 128). Moreover, the same fairness principle upon which the agency rule discussed at page 358, 359 above is grounded also determines what is a moral obligation which can be constitutionally recognized without violating the gift restriction (People v Westchester County Nat. Bank, 231 NY 465, 477 ["some direct injury suffered by the claimant under circumstances where in fairness the State might be asked to respond”]).

. The provision was omitted from the 1972 recodification of the Village Law, apparently, however, without intent to change the rule, see section 57 of chapter 892 of the Laws of 1972.

. As above noted (supra, at p 357), the reargument avenue was ultimately successful, after the Second Circuit decision in the Bivens case.

. Since plaintiffs would be entitled to attorneys’ fees except for the unauthorized substitution, the second sentence of footnote 1 of the majority opinion is based on a misunderstanding of my position.

&Designated pursuant to section 2 of article VI of the State Constitution.