**Roderick WILLIAMS, Plaintiff,**

v.

**Michael CODD, Philip A. Michael, Maurice Nadjari, Richard Nachman, Edward Smith, Police Department of the City of New York and Thomas Chaipis, Defendants.**

**No. 78 Civ. 1503 (RLC).**

United States District Court,
S. D. New York.

Oct. 24, 1978.

---

Jeffrey S. Stephens, New York City, for plaintiff.

Allen G. Schwartz, Corp. Counsel of the City of New York, New York City, for defendants Codd, Michael, Smith and Police Department; Norma Kerlin, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

The plaintiff in this case is a former member of the New York Police Department. In 1974 the Department initiated disciplinary proceedings against him, and a series of departmental hearings, negotiations and state court adjudications followed. The departmental proceedings terminated when the parties reached a compromise agreement which purported to be "a final settlement of all claims by both parties." This compromise was incorporated in an order of New York State Supreme Court Justice Abraham J. Gellinoff before whom an Article 78 proceeding regarding the same matter was then pending.

Williams has now brought an action in this court under 42 U.S.C. §§ 1983 and 1985, alleging that the defendants, who all played some role in the disciplinary proceedings, acted under color of state law to deprive him of his due process rights. Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1343. The defendants include the Police Department of the City of New York together with Michael Codd, Phillip A. Michael, and Edward Smith. During all times relevant to this lawsuit, Codd was police commissioner of the City of New York. Michael was the hearing officer who presided over Williams' disciplinary proceedings, and Smith was the Department's counsel at these hearings. Other defendants include Maurice Nadjari, former New York State Special Prosecutor, Richard Nachman, an

employee of the Special Prosecutor's office, and Thomas Chaipis, a private citizen who testified against Williams in the disciplinary proceedings.

Defendants Police Department, Codd, Michael, and Smith have moved pursuant to Rule 12(b), F.R.Civ.P., to dismiss the complaint as it applies to them. These defendants argue that: (1) the action is barred by the terms of the settlement agreement, (2) the complaint fails to state a cause of action against the Police Department, (3) the complaint fails to state a cause of action that would lie under 42 U.S.C. § 1985 against any of the defendants, and (4) Michael and Smith are absolutely immune from suit based on their roles in the hearings as judge and prosecutor.

For the reasons set forth below, defendants' motion is denied.

*Background*[1]

Plaintiff Williams alleges that in April of 1974 when he was still a police lieutenant, he was called to the office of the Special Prosecutor and questioned about his relationship with Chaipis. Chaipis owned a bar that was believed to be a center of prostitution activity, and Williams was thought to be friendly with Chaipis. Williams alleges that after questioning him about Chaipis, Nachman sought his cooperation in obtaining statements that would incriminate another police officer. Nachman threatened that action would be taken against Williams based on his relationship with Chaipis if he failed to cooperate. Williams refused to act as informant and instead filed retirement papers.

On April 30, 1974, the Police Department filed charges against Williams, alleging six counts of misconduct. A departmental hearing was held on May 13, at which Michael presided as trial commissioner and Smith served as advocate for the Department. Plaintiff alleges that Michael stated

that the evidence before him would mandate a finding of guilt and a recommendation of dismissal from the Department, and that the only way for Williams to preserve his pension rights would be to plead nolo contendere to each of the charges. Ultimately, a compromise was struck by which Williams pleaded nolo contendere to four of the charges, two of the charges were dropped, and Williams paid a fine of $7,500.00 and retired from the Department.

In September, 1974, Williams filed an Article 78 petition[2] in the state court seeking to have the plea agreement vacated. In his petition Williams alleged that the stipulation had been procured by false allegations, duress, coercion, and perjurious testimony, that he had been prevented from preparing a defense, and that he had subsequently uncovered exculpatory evidence. In an order dated August 4, 1974, State Supreme Court Justice Sidney A. Fine vacated the stipulation, directed that Williams be given a due process hearing on the charges against him, and ordered the Department to return the fine that Williams had paid and restore him to duty.

Before a second departmental hearing was initiated, Williams brought a second Article 78 proceeding in which he petitioned for the appointment of a neutral hearing officer to replace Michael as presiding officer. The basis for this request was Williams' allegation that the Department and its employees were biased and prejudiced against him and would not afford him a fair hearing. This bias was said to result from Commissioner Codd's personal animosity toward Williams. In the process of investigating the charges that he was facing, Williams obtained tapes of a conversation he had had with defendant Chaipis which included references to Codd's reputedly improper intercession on behalf of another police officer who had faced charges of

---

1. The facts are set forth here in the light most favorable to the plaintiff, as is appropriate in considering a motion to dismiss.

2. An Article 78 proceeding is an action under New York practice in which a petitioner seeks

an order analogous to a writ of mandamus or prohibition to compel a government official to perform duties required by law or to refrain from illegal acts. N.Y.C.P.L.R. § 7801 *et seq.*

corruption. Plaintiff, believing these tapes to support his claim of innocence, delivered them to the Special Prosecutor's office which in turn released them, without Williams' permission, to the Police Department and to Commissioner Codd. Plaintiff alleges that because of the resulting malice Codd ignored the recommendation of the Corporation Counsel's office and refused to restore Williams to duty pending the outcome of the disciplinary charges. Nevertheless, State Supreme Court Justice Abraham J. Gellinoff dismissed the plaintiff's Article 78 petition, holding that the court would not presume in advance that Williams would be denied his due process rights.

Following the dismissal of his petition, Williams again entered into negotiations with representatives of the Police Department. Plaintiff alleges that he was initially offered a settlement that would have included the dropping of all charges against him, the return of his fine, and restoration of his full pension rights. This offer, however, was purportedly withdrawn at the behest of Codd. The matter then proceeded to hearing.

At the hearing Smith presented the evidence for the Police Department and an off the record conversation followed. At this discussion Michael, again the presiding officer, commented on the strength of the Department's case. In lieu of presenting a full defense, Williams then agreed to a settlement substantially similar to the stipulation entered into at the initial hearing.

Williams, however, then renewed his application to Justice Gellinoff for relief pursuant to Article 78. He argued that Michael's comments constituted undue pressure and prevented him from presenting his defense. Justice Gellinoff initially found that Michael's statements were improper, vacated the agreement and remanded the case to the Police Department for a new hearing before a different hearing officer.

In a lengthy decision rendered on February 3, 1977, Justice Gellinoff then modified his order by directing that any future hearing in this matter take place before a referee appointed by the court. Justice Gellinoff found that Williams had twice been denied a fair hearing by Commissioner Codd and his subordinates. He further acknowledged that the facts supported Williams' allegations of personal bias on the part of defendant Codd. Justice Gellinoff also took notice of another alleged incident, brought to his attention during conferences with counsel, in which the Police Department had improperly interfered with Williams' attempts to secure a private investigator's license. Finally, Justice Gellinoff found that the Department had not presented substantial evidence in supporting the charges lodged against Williams.

No new hearing ever took place. Once again, negotiations were entered into, this time with Justice Gellinoff himself taking part. At the same time, the Police Department submitted additional evidence to the court, buttressing its case against Williams and attempting to refute the allegations of bias on the part of its officers. Justice Gellinoff found it unnecessary to pass upon the additional evidence, as the negotiations led to a stipulation substantially similar to the preceding compromises, and Justice Gellinoff incorporated this agreement in his final order. Because of the importance of this agreement to the disposition of the motion now before this court, it is set out in full in the margin.[3]

---

**3.** "IT IS HEREBY STIPULATED by and between Petitioner and Respondents in the proceeding above-entitled, that said parties hereby agree and consent to the entry of the Order, a copy of which is annexed hereto, and a part of which is contemplated to be the terms and conditions of this Stipulation.

In consideration of the terms and conditions of this Stipulation and consent to the entry of the aforementioned order the parties agree to the following terms and conditions:

1. The Petitioner agrees to waive all claim, title, or right against the Respondents and/or the City of New York for any back-pay or wages allegedly due the Petitioner by reason of any disciplinary proceedings brought by the Department or any litigation concerning these proceedings in this or any future action by the Petitioner or his assigns.

In addition, the Petitioner agrees that this waiver shall include any claims against the Police Department and/or the City of New

*Williams' Claims*

The plaintiff has asserted a wide variety of claims based on the foregoing events. Williams first alleges that defendants Nachman and Nadjari improperly pressured him into filing for retirement by threatening him with retaliation for his refusal to cooperate in obtaining evidence against another police officer. This is alleged to have been a violation of Williams' civil rights, presumably because it served to deprive him of liberty or property without due process of law.

Plaintiff also alleges a deprivation of his due process rights as the result of a conspiracy among Nachman, Nadjari, Codd, Michael, Smith and Chaipis. Williams asserts that these defendants conspired to have Chaipis testify against him in return for special consideration in retaining a liquor license, despite Chaipis' criminal conviction and evidence of prostitution on his premises. The gist of Williams' allegation is that Chaipis' testimony was known by the other defendants to be untrustworthy, but that they persevered in presenting it because of malice toward the plaintiff.

The third set of allegations involves the conduct of Michael, purportedly acting in concert with the other defendants, during the first departmental proceedings. Williams asserts that Michael improperly assumed the role of an adversary rather than a neutral magistrate and that his threats to deprive Williams of his pension rights coerced the plaintiff into entering into the first stipulation. Williams also alleges that

York, for an addition towards his New York City Police Department Pension based upon night differential or any application for disability retirement.

2. The parties agree that the charges and specifications filed by the Department against the Petitioner, annexed hereto as Exhibit 'A', shall remain in full force and effect except as to specifications 3 and 4 thereof, which the Department agrees to *Nolle Prosequi*.

As to specifications 1, 2, 5 and 6, the Petitioner pleads *Nolo Contendere* to these specifications.

3. The Petitioner agrees that a fine of $7,500.00 previously imposed upon pleas to these charges and specifications described in Exhibit 'A' hereto and previously paid by the Petitioner, shall be retained by the Department.

4. The Respondent agrees that the time in which the Petitioner was under suspension during his employment with the New York City Police Department shall be considered good time in computing the petitioner's New York City Police Department Pension. This sum is not intended to include payments for night differential. The amount of the Petitioner's pension shall be based upon the normal salary used for pension purposes at 20 years of service (Lt. over 3, $27,562.87), less the annuity value of any shortage in the member's account.

5. In addition, the Department agrees that the Department's disciplinary record concerning this Petitioner shall be marked Confidential so as to preclude public access to details of this disciplinary proceeding in departmental files, except as to those law enforcement agencies which would normally have access to confidential material in police files, and except in response to judicial subpoena for these records or order of any Court to disclose such information.

However, the parties agree that neither the Department nor the City of New York shall be liable to the petitioner, for any mistake, error, accident or negligence of its employees, resulting in disclosure of these records.

6. The parties hereby agree that no appeal of this matter shall be made by either the Petitioner or the Respondent and this is a final settlement of all claims by both parties.

7. Both parties agree and state that this stipulation is entered into freely and upon the advice of attorneys representing each party.

8. It is expressly understood and agreed by the parties hereto that the settlement of the within litigation by this Stipulation and the aforesaid Order is expressly conditioned upon the approval of the terms of Paragraph 4 hereof, by the Board of Trustees of the Police Pension Fund, Article 2. In the event that the Board of Trustees of the Police Pension Fund, Article 2, fails to approve said terms, then this Stipulation shall be vitiated, and shall be null and void, and the settlement upon which it is based shall be of no force and effect, and further, the parties shall consent to the restoral of the Order of Justice Gellinoff dated March 14, 1977, and shall proceed in this litigation from that point.

9. It is agreed and understood by the parties hereto that the annexed order shall provide that the order of this Court dated March 14, 1977, appointing a special hearing officer to hear the Departmental charges against the petitioner, shall be vacated.

10. It is agreed by the parties hereto that this Stipulation and Order have been agreed to and entered into in the interests of justice, and that petitioner's pleas to specifications 1, 2, 5 and 6 of the charges and specifications filed against him constitute pleas of nolo contendere as distinguished from pleas of guilty."

through this stipulation Michael imposed sanctions that were beyond his authority and he thus violated plaintiff's rights under the Eighth Amendment and denied him due process as well. Williams also claims that his rights were violated by Nachman and Nadjari when they delivered to the Police Department copies of the tapes received from Williams that included remarks critical of Codd.

Plaintiff next argues that the Police Department and its employees disregarded the order of Justice Fine to return the money accepted from Williams and to restore him to the Department. Apparently this is alleged to be both a deprivation of plaintiff's property without due process and a factor contributing to the denial of procedural due process because the withholding of plaintiff's funds coerced him into subsequent settlements.

Williams' additional claims of deprivation of procedural due process concern the second departmental hearing. It is alleged that Codd in particular, because of personal animosity toward Williams, coerced the plaintiff into an unwanted settlement by refusing to approve compromise offers made by his subordinates. Michael, during a recess from the hearing, then commented improperly on the weight of the evidence, thereby coercing Williams into another tainted stipulation.

Finally, Williams contends that one or more of the defendants, whose identity is not specified in the complaint, improperly interfered with his application for a private investigator's license and thus damaged his employment prospects and his reputation in violation of his due process rights.

### Res Judicata

Because the most recent stipulation between the parties was incorporated in Justice Gellinoff's order, the possibility arises that the instant action is barred by the doctrines of res judicata or collateral estoppel. Although these issues were not initially briefed by the parties, they were addressed during oral argument at the request of the court. For the reasons set forth below, I conclude that these doctrines do not apply with sufficient force to compel dismissal of this action.

■ The doctrine of res judicata will only bar a subsequent action on a matter already litigated if three requirements are met: (1) the prior judgment was rendered by a court of competent jurisdiction, (2) the decision was a final judgment on the merits, and (3) the same cause of action and the same parties or their privies were involved in both cases. Herendeen v. Champion International Corp., 525 F.2d 130, 133 (2d Cir. 1975). In the instant case the first two requirements have been fulfilled. The New York State Supreme Court was clearly competent to rule upon Williams' Article 78 petitions pursuant to N.Y.C.P.L.R. § 7801 et seq. Similarly, the incorporation of a settlement agreement between the parties constituted a final judgment, since consent decrees are accorded res judicata effect. United States v. Southern Ute Indians, 402 U.S. 159, 91 S.Ct. 1336, 28 L.Ed.2d 695 (1971).

■ The applicability of res judicata, then, turns on whether the cause of action presented here is identical to that raised in the state courts. If it is, dismissal of the instant action would be appropriate, since decisions of state courts with regard to issues of federal law are granted preclusive effect. Winters v. Lavine, 574 F.2d 46, 54 (2d Cir. 1978); Mitchell v. National Broadcasting Co., 553 F.2d 265, 274 (2d Cir. 1977).

Determination of whether two causes of action are identical is hardly an exact science. As the Second Circuit explained in Herendeen v. Champion International Corp., supra, at 133–34, at least three different approaches have been utilized. One test focuses on whether a different judgment in the second action would impair rights established by the first judgment. A second standard is based on whether the same evidence that was required in the first action is necessary to the second. The third test examines whether the facts and issues essential to the second action were present in the first. Regardless of the approach

taken in this case, the result is the same: the cause of action raised here is not identical to that presented to the state courts.

### a. Federal Cause of Action

■ It is beyond dispute that the Civil Rights Act of 1871 created a federal remedy for the violation of federally-created rights. Courts have repeatedly emphasized distinctions between cases arising under state law and a cause of action generated by 42 U.S.C. § 1983. *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), is the principle example. There, the Supreme Court held that "[t]he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." Thus, the Court found that the fact that the state courts provided a mechanism for redress of constitutional violations did not prevent a plaintiff from choosing the federal forum for bringing a case based on violation of his Fourth Amendment rights.

The supplementary nature of the Civil Rights Act is not confined to providing a plaintiff merely with an initial choice of forum. In holding that federal law is to be applied in considering a § 1983 claim, the Tenth Circuit said:

> [T]he rights under this statute and the rights arising under the state common law, although similar, are nonetheless distinct remedies. The same set of facts may give rise to violations of both the federal statute and the state common law, but the rights are not necessarily coterminous and the essential criteria are not necessarily the same.

*Martin v. Duffie*, 463 F.2d 464, 467 (10th Cir. 1972). Similarly, the Supreme Court has indicated that the same universe of facts can underlie both a federal statutory claim and a cause of action based on § 1983. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 n. 5, 90 S.Ct. 1598, 26 L.Ed.2d 142

(1970). In sum, "[t]he rights protected by § 1983 are public ones, created or adopted by the Federal Constitution or by Congress." *Howell v. Cataldi*, 464 F.2d 272, 279 (3d Cir. 1972).

■ The decision of the Second Circuit in *Lombard v. Board of Education*, 502 F.2d 631 (1974), *cert. denied*, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975), is infused with these principles regarding the nature of the Civil Rights Act. In *Lombard* the court concluded:

> [P]olicy considerations should not permit the extension of the res judicata doctrine in this case to issues of procedural due process which are said to raise claims under 42 U.S.C. § 1983.

*Id.* at 635. The doctrine of *res judicata* does apply to civil rights cases in general, of course, but in a somewhat relaxed form. *Morpurgo v. Board of Higher Education*, 423 F.Supp. 704, 710 (S.D.N.Y.1976) (Weinfeld, J.). In most situations, a party is bound by *res judicata* with respect to all issues that were raised or could have been raised in a prior proceeding. In *Lombard, supra*, however, the court held that a dismissed teacher who did not raise his due process claims in an Article 78 proceeding was not barred from later bringing an action in federal court based on § 1983. Thus, a plaintiff may reserve a civil rights claim for litigation in the federal courts, and the determination of the instant case must turn on whether Williams fully submitted his potential federal claims to the state courts.

### b. Posture of the Case

■ That the instant case presents a cause of action different from that advanced in the state courts can be inferred in part from the wholly different posture that the case has now assumed. Previously, Williams was on the defensive, much like a criminal defendant who is attempting to prevent constitutional violations from tainting the proceedings in which he is the target.[4] Now he is on the offensive, seeking

---

4. It is beyond dispute that a defendant in a criminal prosecution who succeeds in having evidence suppressed because it was unlawfully obtained may later bring an action for damages

for violation of his Fourth Amendment right to be free of unlawful searches and seizures. *See United States v. Calandra*, 414 U.S. 338, 354 n. 10, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (listing

compensation for wrongs allegedly done to him in the course of the prior proceedings. It must be emphasized that Williams did not bring a full-blown tort suit in the state courts. Had he done so, his claim for damages under § 1983 might well be precluded. But Williams' Article 78 petitions sought only injunctive relief directed toward assuring that the ongoing administrative hearings would be fair.

■■■ Defendants argue that the mere demand for a different form of relief does not create a new cause of action. As a general proposition, this is entirely correct. *See Clarke v. Redeker*, 406 F.2d 883, 885 (8th Cir. 1969) (plaintiff who had claim for injunctive relief dismissed could not maintain subsequent action on same claim for damages); *Dells, Inc. v. Mundt*, 400 F.Supp. 1293, 1297–98 (S.D.N.Y.1975) (Wyatt, J.) (plaintiff losing declaratory judgment action in state court barred from seeking damages in federal court); *International Prisoners' Union v. Rizzo*, 356 F.Supp. 806 (E.D.Pa.1973) (prisoners who won injunctive relief in state court for constitutional violations barred from federal court action differing only in relief sought). However, a plea for different relief may illuminate the distinctions between two causes of action. In *Williams v. Ward*, 556 F.2d 1143 (2d Cir. 1977), for example, the court declined to rest its dismissal of a complaint on *res judicata* grounds precisely because the judgment in one case would operate prospectively, while the relief sought in the other would be immediate. *Id.* at 1155. In the instant case, the fact that Williams is seeking damages for the first time is not dispositive. It is, nevertheless, one indication that his current cause of action may

not be identical to that pursued in the Article 78 proceedings.[5]

■■■ This point is buttressed by the observation that an Article 78 proceeding is a limited forum in which only designated questions may be raised and in which relief is restricted. *Ornstein v. Regan*, 574 F.2d 115, 118 (2d Cir. 1978). Most important, damages are only available to a petitioner when they are "incidental to the primary relief." *Schwab v. Bowen*, 41 N.Y.2d 907, 394 N.Y.S.2d 616, 363 N.E.2d 341 (1977); *Allen v. Eberling*, 24 A.D.2d 594, 262 N.Y. S.2d 121, 122 (2d Dept. 1965). In *Schwab v. Bowen, supra*, the New York Court of Appeals held that damages could not be awarded in a case where employees were seeking to have their discharge reviewed. Thus, it is far from clear that the New York courts would have considered compensation for the deprivation of due process rights sufficiently incidental to Williams' Article 78 petitions to merit an award of damages. To deny the plaintiff access to federal court in this context would be contrary to the purposes of the Civil Rights Act. Therefore, when a plaintiff seeks injunctive relief in a state court proceeding where the authority to grant compensation is doubtful, he may later be accorded an opportunity to seek damages in the federal court through a § 1983 action.

### c. The Due Process Issue

■■■ The specific issues raised in the state courts, like the general posture of the case, are distinguishable from the instant action. As noted above, federal claims not raised and determined in the state courts may be litigated later in an action brought

---

remedies available to victim of unlawful search).

**5.** Indeed, this case illustrates a unique problem that is involved only where continuing deprivations of rights are involved. At the time that Williams brought each of his Article 78 petitions, he may well have believed that any deprivation of his rights caused by the defendants would be redressed by the subsequent hearing. When he continued to be denied due process rights at each successive hearing, the possibility that he would be made whole by the type of

injunctive relief he had originally sought diminished. This is precisely the circumstance in which the supplementary nature of the federal remedy created by the Civil Rights Act is most meaningful, since it is a situation where the state remedy is insufficient to protect the plaintiff's constitutional rights. A plaintiff who, in good faith, attempts to utilize state remedies incrementally in order to preserve his rights should not be shut out of federal court when the defendants' action serves to emasculate the total effect of these state remedies.

under § 1983, even if the issues could have been litigated in the state forum. *Lombard v. Board of Education, supra; Newman v. Board of Education,* 508 F.2d 277 (2d Cir. 1975), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975). New York State courts have routinely taken jurisdiction over cases brought under § 1983. *See, e. g., Nieves v. New York City Transit Authority,* 91 Misc.2d 214, 397 N.Y.S.2d 531, 532 (Sup.Ct.New York Co.1977); *Brody v. Leamy,* 90 Misc.2d 1, 393 N.Y.S.2d 243, 257 (Sup.Ct.Dutchess Co.1977). Thus, the issue is reduced to whether the § 1983 claims that might have been litigated in the state courts were actually raised there.

■ If Williams had raised his due process claims and had them fully determined in the Article 78 proceedings, the doctrine of *res judicata* would apply with full force. The Second Circuit recently reaffirmed this principle in *Winters v. Lavine,* 574 F.2d at 54 (2d Cir. 1978), where the court dismissed an action when the plaintiff admitted raising an identical claim in the state court. Similarly, in *Kaufman v. Somers Board of Education,* 368 F.Supp. 28, 30–31 (D.Conn. 1973), a plaintiff who had extensively briefed his constitutional claims in prior state court proceedings was barred from bringing a federal action based on the same claims.

At the same time, unless it is demonstrated that a plaintiff fully presented his federal claims to the state court he is not barred from initiating a § 1983 action. *Ornstein v. Regan, supra,* is directly on point. In that case the plaintiff had challenged his denial of accident disability retirement through an Article 78 proceeding. In his brief to the state court, the petitioner argued that the denial would violate his constitutional rights of due process and equal protection. Nevertheless, the Second Circuit found that this argument had probably been made in

support of the more general assertion that the denial was legally erroneous or arbitrary, issues explicitly authorized for determination at an Article 78 proceeding.[6] In rejecting the contention that the federal suit was barred by *res judicata,* the court acknowledged that "mere mention of 'due process' in the state court is nwr the equivalent of raising a due process constitutional claim." *Id.* at 118. This court reached a similar result in *Perrotta v. Irizarry,* 430 F.Supp. 1274, 1277 (S.D.N.Y.1977) (Ward, J.), where a plaintiff who had "referred only in passing to his claims of denial of due process" in the state court was permitted to litigate these claims in the federal forum.

In the instant case it is apparent that Williams did not raise explicit federal constitutional claims in the Article 78 proceedings. His first petition to the state court attacked the stipulation between the parties as a product of coercion. Williams argued that enforcement of the agreement would result in manifest injustice, and he sought a new hearing. Nowhere in the petition did Williams raise a claim based on denial of federal due process rights. In both his Verified Reply and his Memorandum of Law presented to the state court, Williams relied exclusively on state case law.[7] The basis for the first Article 78 petition, then, was that the stipulation concluding the administrative hearing was affected by error of law and was arbitrary. These are precisely the state law grounds that the Second Circuit in *Ornstein v. Regan, supra,* found *not* to be identical with a federal due process claim.

In the second Article 78 petition, Williams' primary objective was apparently the enforcement of the judgment rendered by Justice Fine in the first proceeding. Pursuant to that judgment, Williams sought the return of the fine he had paid and reinstatement to the Police Department. In addition, he sought to ensure that future departmental hearings concerning the

---

**6.** *See* N.Y.C.P.L.R. § 7803.

**7.** The only exception to plaintiff's exclusive reliance on state law is the reference on page 9 of his Memorandum of Law to *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). This case was cited for the proposition that an opportunity to be heard is essential before a person's reputation can be adversely affected by government action. Plaintiff made no reference to federal due process claims.

charges against him would be conducted in a fair and impartial manner, and with regard to this last objective, Williams alluded for the first time to due process.[8] At most, this is a passing reference. It is best interpreted in the context of the overall petition in which Williams argues that the defendants had not abided by the order of the court. Rather than demanding redress for past violations of due process, Williams was seeking prospective relief in the hope of preventing future deprivations of due process.

Williams' due process claims thus were not presented to the state court. Therefore, plaintiff is entitled to raise them in his present action.

### d. The Operative Facts

■ Defendants argue strenuously that the similarity between the factual basis for Williams' Article 78 petitions and the facts he has alleged here is proof that his claims are identical. There is no doubt that the factual predicate underlying two claims is an important starting point for any analysis of the applicability of *res judicata*. *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir. 1978). However, it is also clear that the same set of events may give rise to more than one cause of action. *Ornstein v. Regan, supra; Martin v. Duffie, supra; Laverne v. Corning*, 316 F.Supp. 629, 638 (S.D. N.Y.1970) (Tenney, J.) (plaintiff could maintain federal suit for constitutional violations, though the same facts are alleged in the state action for malicious prosecution).

■ For the reasons set forth above, plaintiff has stated a cause of action here distinguishable from those on which his Article 78 petitions were based, and the fact that the same facts are alleged does not undercut this result. In this case it would be particularly unjust to make the similarity of operative facts the sole test for the identity of the claims, because it is the peculiar nature of the constitutional viola-

tions allegedly perpetrated by the defendants that forced Williams to present to the state courts the facts that would make out a claim under § 1983. Normally, an administrative decision could be vacated in an Article 78 proceeding because an objective analysis reveals that the decision is affected by an error of law. The motives of the administrative officers need not be in issue. By contrast, for a plaintiff to make out a claim for damages under § 1983, he must do more than meet this objective test. He must show not only that his rights have been violated by someone operating under color of state law, but also that the violation resulted from more than mere negligence. To be liable under § 1983, a defendant must have committed the alleged acts pursuant to an impermissible motivation or in such utter disregard of clearly established constitutional rights that bad faith is apparent. *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Thus, in most cases a petitioner could prevail in an Article 78 proceeding without submitting evidence that would be necessary to any subsequent § 1983 action, i. e., evidence demonstrating the bad faith of the defendants.[9]

■ In the instant case, however, plaintiff's Article 78 petitions were not based merely on objective shortcomings in the process accorded him in the departmental hearings. His argument that he was coerced into a series of unwanted stipulations required that he submit evidence indicating malice on the part of the responsible officials. Thus, defendants cannot be heard to argue that Williams' present claim should be denied on the ground that he presented the same facts to the state court when it is the very nature of the alleged acts by the defendants that necessitated the introduction in the state proceedings of evidence that would otherwise be extraneous.

---

**8.** Petition, Index No. 13836/74, ¶ 6.

**9.** The fact that plaintiff's burden in a § 1983 action differs from his burden in an Article 78

proceeding is itself an element tending to show that a different cause of action is involved. *See Herendeen v. Champion International Corp.*, 525 F.2d 130, 133 (2d Cir. 1975).

### e. Collateral Estoppel

Where two causes of action are not identical, parties may nevertheless be barred from relitigating some of the issues raised in the first action by the doctrine of collateral estoppel, sometimes called issue preclusion. This doctrine only applies, however, where the issue in question was necessary to the decision of the court in the first case, and that issue was decided against the party which is now seeking to relitigate it. *Winters v. Lavine, supra,* 574 F.2d at 56. The doctrine cannot be applied against the plaintiff in the instant case both because the due process issue was not necessary to the state decisions and because Williams prevailed in the state courts.

### Waiver

■ The finding that the present claim is not barred by *res judicata* does not foreclose the possibility that Williams waived his right to bring a § 1983 action when he stipulated to a final agreement that included the following statement:

> "The parties hereby agree that no appeal of this matter shall be made by either the Petitioner or the Respondent, and this is a final settlement of all claims by both parties."

In determining whether this settlement precludes the instant action, it must be remembered that the waiver of constitutional rights will not be lightly implied.

■ The quoted paragraph must be read in the context of the entire settlement agreement.[10] It is evident that this agreement is concerned exclusively with the specific issues raised in the Article 78 proceedings: the charges pending against Williams, his claim to back pay, his claim to disability retirement, the fine that had been levied against him, his disciplinary record, and his pension rights. Indeed, the first numbered paragraph of the settlement agreement even seems to anticipate the possibility of future litigation. In light of the narrow quality of each clause that refers to a specific claim, the agreement as a whole cannot be construed as a waiver of claims such as deprivation of due process that were not at issue in the Article 78 proceedings.

■ This construction of the settlement agreement is buttressed by the inherent ambiguity of the supposed release. There is no indication that the claims referred to in the quoted paragraph go beyond the issues specifically referred to elsewhere in the stipulation. Moreover, the settlement agreement would only bind the signatory parties, and thus it would not seem to apply to those defendants in the present case who were not parties to the Article 78 proceedings. Where a release is ambiguous, the court will look to the intent of the parties. *Locafrance U. S. Corp. v. Intermodal Systems Leasing, Inc.,* 558 F.2d 1113, 1114–15 (2d Cir. 1977); *Ruskay v. Waddell,* 552 F.2d 392, 395 (2d Cir. 1977). Although the release clause itself is ambiguous, the intent of the parties as demonstrated by the entire stipulation was to confine their agreement to the issues addressed in the Article 78 proceedings. Therefore, the settlement is no barrier to the instant action.

### Civil Rights Act Issues

■ Defendants have challenged the legal basis for two aspects of Williams' claims under the Civil Rights Act. First, they argue that under *Monroe v. Pape, supra,* and *Monell v. Department of Social Services,* 532 F.2d 259, 262–63 (2d Cir. 1976), the Police Department is not a "person" within the terms of § 1983, and that dismissal of the complaint with regard to the Department is therefore warranted. Shortly after defendants had submitted their brief, the Supreme Court handed down its opinion in *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), reversing the Second Circuit and overruling the relevant portion of *Monroe v. Pape.* Therefore, there is no absolute bar to maintenance of a § 1983 action against a municipality or its agencies.

■ The *Monell* decision did not, however, impose liability on a municipality

**10.** See note 3 *supra.*

merely on a general theory of respondeat superior. Rather, there must be a showing that the alleged constitutional violations arose from the execution of policy, ordinance, regulation, or decision officially adopted by the agency's officers. *Monell v. Department of Social Services*, supra at 690–91, 98 S.Ct. 2018. Williams has asserted here that the involvement of the highest ranking officials in the Police Department in the alleged conspiracy qualifies as official action. Although it may ultimately be shown that the actions of these officials were not manifestations of an ongoing policy, this is a factual determination.[11] In general, actions in civil rights cases should not be dismissed at the pleading stage unless it is certain that the plaintiff can prove no set of facts that would entitle him to relief. *Escalera v. New York City Housing Authority*, 425 F.2d 853, 857 (2d Cir.), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970). Accordingly, Williams has made allegations sufficient to create a cause of action against the Police Department under § 1983 and to withstand a motion to dismiss.

Defendant's second argument is that Williams' failure to allege any discrimination based on race or any other impermissible classification requires dismissal of the complaint insofar as it is based on 42 U.S.C. § 1985(3). The complaint, however, does not separate plaintiff's claims between those based on § 1985 and those based on § 1983. Apparently, all of the claims are grounded in both sections, since each of defendants' acts is alleged to have been both a deprivation of constitutional rights by persons acting under color of state law and also an act in furtherance of a conspiracy to accomplish such deprivation. As the claims of conspiracy grounded in § 1985(3) neither add to nor detract from the validity of Williams' claims under § 1983, it is unnecessary to rule on defendants' motion with respect to § 1985 alone.

*Immunity*

Defendants assert that absolute immunity should be accorded to the police officials who served as prosecutor and judge in the departmental hearings. It is true that the Civil Rights Act did not abolish all common law immunities. *Wood v. Strickland*, 420 U.S. 308, 317–18, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). But it is equally true that not all government officials were covered by immunity under the common law. *Skehan v. Board of Trustees*, 538 F.2d 53, 59 (7th Cir.) (en banc) *cert. denied*, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976). In civil rights cases in particular the doctrine of official immunity should be applied sparingly. *Dale v. Hahn*, 440 F.2d 633, 637–38 (2d Cir. 1971); *Jobson v. Henne*, 355 F.2d 129, 133–34 (2d Cir. 1966).

In the context of the instant case, it would be inappropriate to cloak Michael and Smith with immunity. Although they are police officials, the actions that allegedly violated Williams' rights were taken when the defendants were functioning as

---

11. Should the plaintiff be unable to demonstrate that the acts of the defendants in this case constitute official policy sufficient to meet the test established by *Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), it may be that he could amend his complaint to state a cause of action arising directly under the Fourteenth Amendment and meeting the jurisdictional requirements of 28 U.S.C. § 1331. The Second Circuit approved such an approach in *Turpin v. Mailet*, 579 F.2d 152 (2d Cir. June 5, 1978) (en banc). In that case, the court permitted a damage action that could not have been maintained under § 1983 to be brought directly under the Fourteenth Amendment. It said:

[w]e hold that a damage action can be maintained against a municipality to redress injuries resulting from those actions of its employees that have been authorized, sanctioned or ratified by municipal officials or bodies functioning at a policy-making level. 579 F.2d at 164. Thus, even though the *Turpin* case itself has been vacated, 47 U.S.L.W. 3360 (Nov. 28, 1978), the Second Circuit standard for actions brought directly under the Fourteenth Amendment may require somewhat less showing of an ongoing official policy than does the test for § 1983 actions outlined by the Supreme Court in *Monell, supra*. Should Williams' allegations in the instant case prove true, there might be sufficient involvement of officials at a policy-making level to meet this lower standard for actions arising directly under the Constitution.

employers of plaintiff, not when they were acting as judge or prosecutor with respect to the general public.

Most recent decisions have granted limited rather than absolute immunity to government officials who do not qualify for the traditional judicial or prosecutorial immunities. In *Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the Court stated that immunity would be extended to a governor, officers of a state national guard, and the president of a university for actions taken within the scope of their responsibilities only if they were acting in good faith. Similarly, in *Wood v. Strickland, supra,* the Court held that in the process of disciplining students, school officials would receive immunity only if their actions were found to be in good faith and not in flagrant disregard of the unquestioned constitutional rights of the students. *Supra* 420 U.S. at 321–22, 95 S.Ct. 992. Ignorance of indisputable standards of due process was held to be no excuse. *Id.* at 320–21, 95 S.Ct. 992.

 The Seventh Circuit has dealt with two cases directly analogous to the present situation. In *Simcox v. Board of Education,* 443 F.2d 40, 42 (7th Cir. 1971), the court said:

> "Any immunity which public officials enjoy in dealing with their employees is limited by the requirement that their actions *vis-a-vis* such employees be taken in good faith."

More recently, the same court, sitting *en banc,* concluded:

> "*Wood v. Strickland, supra,* demonstrates that we erred in assuming that there still exists an unqualified, common law immu-

nity covering nonjudicial state government officials performing adjudicatory functions."

*Skehan v. Board of Trustees, supra,* at 60. The *Skehan* case describes precisely the situation presented here: nonjudicial officials performing adjudicatory functions with respect to an employee. As such, defendants are entitled to at most a qualified immunity. Plaintiff has asserted both that defendants acted with malice and that they acted beyond the scope of their duties, and he has thus alleged enough to overcome this defense on a motion to dismiss.[12]

Both of the primary cases relied upon by the defendants are distinguishable. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), involved absolute immunity granted to a *public* prosecutor for acts taken within the scope of his prosecutorial functions. *Dacey v. New York County Lawyers' Ass'n,* 423 F.2d 188 (2d Cir.), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970), concerned the prosecutorial function of a bar association. In *Dacey,* the association acted as an adjunct of the court, and the cases it brought were tried in the state courts. By contrast, defendants in this case were acting as employers, not as officers of the court, and the case was tried not before an impartial tribunal but before other officials of the Department. In this context, no immunity should be granted in the absence of a showing that defendants acted in good faith within the scope of their duties.

### Conclusion

As the plaintiff has pleaded a cause of action distinguishable from that upon which

---

12. A holding to the contrary would make a mockery of due process in the context of administrative hearings. Officials could simply ignore all due process requirements, safe in the knowledge that regardless of their motivations or of their utter disregard for constitutional rights they would be immune from liability for damages. Without the deterrent power of § 1983 damage actions, plaintiffs denied due process in administrative hearings would be relegated to the expense of seeking injunctive relief that would not necessarily make them whole. Indeed, the effect of granting immunity in the case at bar would not be easily contained. It would surely apply to all hearings regarding the dismissal of public employees as required by *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Moreover, it seems that immunity for public officials performing adjudicatory functions would extend, by the reasoning of defendants, even to hearings with regard to public entitlements as are mandated by *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and its progeny.

the prior state court proceedings were based, this action is not barred by *res judicata*. Similarly, the settlement agreement between the parties to the state court actions does not waive the plaintiff's right to bring the instant action. The plaintiff has made allegations against all of the defendants sufficient to state a claim under 42 U.S.C. § 1983, and his allegations of malice on the part of defendants Michael and Smith are adequate to overcome the qualified immunity to which they are entitled. Accordingly, defendants' motion to dismiss the complaint is denied.

IT IS SO ORDERED.