**John KATRIS, Plaintiff,**

v.

**CITY OF WAUKEGAN et al.,
Defendants.**

**No. 78 C 2865.**

United States District Court,
N. D. Illinois, E. D.

Sept. 5, 1980.

Paul R. O'Malley, Gerald L. Ritter, Chicago, Ill., for plaintiff.

Robert E. Lessman, Waukegan, Ill., Michael B. Roche, Michael P. Mullen, Alan O. Amos, Chicago, Ill., James R. Schirott, Des Plaines, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This is an action under 42 U.S.C. § 1983[1] to redress an alleged deprivation of the plaintiff's civil rights resulting from the denial of an occupancy permit and a liquor license. The defendant City of Waukegan has filed a motion to dismiss the third amended complaint.

Plaintiff alleges that in 1976 the City of Waukegan, acting through its chief executives and policy–making officials, denied plaintiff an occupancy permit and liquor license for premises located at 550 Green Bay Road, Waukegan, Illinois. Count I of the complaint specifically names the mayor, building commissioner, and assistant building commissioner as the individuals involved in the city's refusal to grant an occupancy permit. Count II names the mayor as the official who made the decision to deny the liquor license.[2] Plaintiff states that, although he complied with all applicable ordinances and procedures, the defendants "invidiously, arbitrarily, and unjustifiably" denied his applications while routinely granting permits and licenses to others similarly situated. Plaintiff charges that his applications were refused without a statement of reasons and without a hearing. The complaint concludes that the defendants' acts violated the due process and equal protection clauses of the fourteenth amendment.

---

1. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. While the third amended complaint includes allegations against the building commissioner and assistant building commissioner, the parties' memoranda concentrate on the denial of the liquor license by the mayor. We will, therefore, restrict our discussion to the allegations regarding the liquor license.

Count III of the complaint alleges that the city, by way of various ordinances embodied in chapter 4, article II of the Waukegan Municipal Code, vested total authority and discretion regarding issuance of Waukegan liquor licenses in the mayor. These municipal ordinances, says the plaintiff, represented the official policy of the city and failed to provide for: (a) standards governing mayoral discretion in evaluating "good character and reputation in the community"; (b) notice to an applicant of denial, revocation or renewal of a liquor license; (c) a statement of reasons why an applicant is denied a liquor license; (d) a right to a hearing on denial of a license; and (e) a right to appeal a mayoral decision denying a license to another decision–making body. According to the plaintiff, the city's failure to provide procedural safeguards in the issuance of licenses deprived plaintiff of his occupation and business and proximately resulted in severe financial losses for which he seeks compensatory and exemplary damages.

The City of Waukegan has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b) for failure to state a claim upon which relief can be granted. A district court should grant such a motion only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The defendant asserts several reasons why this court should grant its motion.

First, defendant contends that plaintiff's third amended complaint alleges no new facts to distinguish it from his earlier pleadings. Defendant notes that the case was assigned to this court by executive order on September 7, 1979. Prior to reassignment, on October 18, 1978, another judge in this district granted the city's motion to dismiss. Thereafter, on August 9, 1979, he denied plaintiff leave to file a second amended complaint for the purpose of reintroducing the city of Waukegan as a defendant into the case. Therefore, concludes the defendant, plaintiff's third amended complaint, allegedly lacking in new facts, is an attempt to seek collateral review of this judge's orders of October 18, 1978, and August 9, 1979. According to the defendant, such tactics represent a form of "judge–shopping" that should not be permitted.

Defendant's contentions are not persuasive. The city is ignoring Count III, which has been added to the complaint, and challenges city ordinances as implemented by the mayor. Furthermore, the law of municipal liability remains somewhat unsettled since the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There, the court expressly declined to address "what the full contours of municipal liability under § 1983 may be." *Id.* at 695, 98 S.Ct. at 2038. The instant case warrants reconsideration in light of recent case law interpreting *Monell.*

The *Monell* Court held that local governments can be sued directly under § 1983 when constitutional deprivation stems from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." *Id.* at 690, 98 S.Ct. at 2036. Relief is also available "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision–making channels." *Id.* at 691, 98 S.Ct. at 2036.

The defendant's claim is that, in view of this language in *Monell*, the complaint fails to allege any official misconduct on the part of the city which would give rise to a cause of action under § 1983. The city argues that the mayor, as local liquor control commissioner, has exclusive control over the issuance of liquor licenses. The power is conferred upon the mayor by the State of Illinois, Ill.Rev.Stat. ch. 43, §§ 111, 112, 113, and 120 (1979). Thus, the defendant contends that it had no authority to develop its own policy regarding the issuance or non–issuance of liquor licenses. It was not that the city abdicated responsibility or granted unfettered discretion to the mayor. Rather, it was simply that the city had no jurisdiction because the mayor's power is exclu-

sive. That the mayor acted on his own, says the city, is further evident from the fact that it *was* the policy and custom of Waukegan to issue liquor licenses. The mayor was therefore not implementing city policy when he denied a license to the plaintiff. Defendant points out that liability cannot be imposed on a municipality under a *respondeat superior* theory, *Id.* at 691, 98 S.Ct. at 2036, and therefore concludes that the plaintiff's claim lies against the mayor as an individual who misused the power of his office, not against the government as a whole.

█ The defendant's argument is somewhat contradictory. First, the city states that it had no authority to create a policy regarding issuance of liquor licenses. Then, the city states that it had a policy of granting them. The defendant cannot have it both ways. While it is true that Ill.Rev. Stat. ch. 43, §§ 111, 112, and 113 charge the mayor with issuance of liquor licenses, he does not act entirely on his own. Section 111 provides in pertinent part: "The mayor . . . shall be the local liquor control commissioner . . . and shall be charged with administration . . . of such ordinances and resolutions relating to alcoholic liquor as may be enacted." Thus, the statute anticipates that the mayor will act in conjunction with the city council. Chapter 4, article II of the Waukegan Municipal Code deals with retail liquor licenses. Section 4–26 states that "applications for a license . . . shall be made to the mayor." Also included are provisions regarding persons ineligible for a license, classes of licenses, fees, renewal, and revocation. However, as plaintiff correctly points out, these ordinances, promulgated by the city council, fail to provide for a right to a hearing or a statement of reasons for denial of an application. It appears that city policy was to leave the manner of issuance of licenses to the mayor's discretion. Therefore, when the mayor denied plaintiff's application without a hearing or reasons he was acting pursuant to authority given him by the council, and his actions must be viewed as those of the city.

Plaintiff suggests an alternate approach to impose liability on the City of Waukegan for the alleged misconduct of the mayor. Plaintiff focuses on the following language from *Monell*:

> It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Sec. 1983.

*Id.* at 694, 98 S.Ct. at 2038. Many courts construing *Monell* have interpreted this language to mean that the policies of high–ranking officials constitute "official policy." In *Goss v. San Jacinto Junior College*, 588 F.2d 96, *modified*, 595 F.2d 1119 (5th Cir. 1979), plaintiff, an untenured junior college instructor was denied renewal of her contract in retaliation for her exercise of first amendment rights. The Board of Regents voted not to rehire plaintiff on the recommendation of the president of the college. The court ruled that the college as an entity was liable under *Monell* for the actions of its president since "[the president] is surely one 'whose edicts or acts may fairly be said to represent official policy.'" *Id.* at 98.

Similarly, in *Williams v. Codd*, 459 F.Supp. 804 (S.D.N.Y.1978), the actions of high–ranking police officials were held sufficient to qualify as the official policy of the police department and create a cause of action under *Monell*. In addition, in *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir. 1980), the court concluded that a showing that the mayor directed a campaign to stigmatize the plaintiff in his position as director for a model neighborhood corporation would state a claim for municipal liability. The court explained that "surely the mayor is the one city official whose edicts and acts represent municipal policy." *Id.* at 448.

The defendant City of Waukegan attempts to distinguish *Goss* and *Williams* from the case at bar. Defendant argues that *Monell* requires the discriminatory misconduct to be more than an alleged abuse of a single official's power in order to justify a

suit against the entire entity. Both *Goss* and *Williams*, says the defendant, satisfy this requirement. In *Goss*, the wrongdoing was action of the Board of Regents and the president who collectively were considered the alter ego of the defendant college. In *Williams*, the actions being challenged were those of the department's alter egos, the ranking department officials. If, as defendant concludes, "something more" than conduct of a high–ranking official is required to hold an entity directly responsible, that quality is present in the instant case: the mayor, as discussed above, acted in conjunction with the city by executing ordinances enacted by the city council. These ordinances, allegedly lacking procedural safeguards, provide the "affirmative link" between the mayor's alleged misconduct and municipal policy. *See Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976).

■ The City of Waukegan also argues that in both *Gross* and *Williams* the plaintiffs had no refuge or relief from the actions of the entity because the officials with whom they dealt were equivalent to the entity itself. Defendant emphasizes that plaintiff Katris never appealed to an alderman or the city council to seek review of the mayor's decision. The city concludes, therefore, that it should not be penalized when the plaintiff never attempted to obtain the aid of the local lawmakers.

We reject this argument. A request by plaintiff for intervention of the city would have served no purpose where the city disclaims any authority over the issuance of liquor licenses. Accordingly, we hold that plaintiff's allegations satisfy the requirements of *Monell.*

In addition to arguing that the city should not be held liable for the decisions of the mayor, the city's reply memorandum suggests that the Illinois liquor control statute, Ill.Rev.Stat. ch. 43, § 97 *et seq.*, provides an adequate procedure to safeguard the rights of applicants for liquor licenses. In particular, the city observes that the statute provides for *de novo* review by the state commission of liquor license applica-

tions. Ill.Rev.Stat. ch. 43, § 153. Though its brief is far from clear on this point, the city apparently believes that this statute deprives local bodies of the power to establish their own procedures with respect to liquor licenses, or, in the alternative that *de novo* review of local decisions provides a constitutionally adequate procedure even if local liquor control commissioners summarily reject some applications.

■ The first of these arguments is clearly incorrect. The statute explicitly authorizes municipalities "to establish such further regulations and restrictions upon the issuance of and operations under local licenses not inconsistent with law as the public good and convenience may require." Ill.Rev.Stat. ch. 43, § 110. In particular, the section of the statute dealing with appeals from decisions of local commissioners anticipates that cities may wish to hold formal hearings on liquor license applications. This provision states that a city council or board of trustees may adopt a resolution limiting review by the state liquor control commission to the official record of the proceedings at the local level. Ill.Rev.Stat. ch. 43, § 153. See *Rincon v. License Appeal Commission*, 62 Ill.App.3d 600, 19 Ill.Dec. 406, 378 N.E.2d 1281 (1st Dist. 1978). The statute thus not only explicitly grants municipalities the power to establish their own procedures, in some respects it encourages them to develop independent procedural safeguards by limiting state review when the city has already provided an adequate hearing.

The city's second argument, that the *de novo* hearing authorized by the statute obviates the need for anything but summary treatment at the local level, raises a much closer question. Courts analyzing due process claims of this type approach them with a two–step analysis: first, has there been a deprivation of a "liberty" or "property" interest triggering the protection of the Fourteenth Amendment? Second, if there has been a deprivation of "liberty" or "property", do the state procedures provide due process of law? See, e. g., *Raper v. Lucey*, 488 F.2d 748 (1st Cir. 1973).

The city does not deny that the plaintiff has a property interest in a liquor license. The statute itself suggests that a qualified applicant has a reasonable expectation of receiving a license. See Ill.Rev.Stat. ch. 43, § 120 (listing specific reasons for denying applications, suggesting a statutory "entitlement"). In addition, the leading federal court decisions in this area hold that qualified applicants have a property interest in obtaining a liquor license. See, e. g., *Hornsby v. Allen*, 326 F.2d 605 (5th Cir. 1964).

Having concluded that the plaintiff has alleged that the city deprived him of property, the question becomes whether the mayor's procedures provided due process of law. Ordinarily, a rejected applicant for statutorily authorized governmental benefits is given notice and an opportunity to respond to evidence against him. As Judge Tuttle observed in *Hornsby v. Allen, supra*:

> Since licensing consists in the determination of factual issues and the application of legal criteria to them—a judicial act— the fundamental requirements of due process are applicable to it. Due process in administrative proceedings of a judicial nature has been said generally to be conformity to fair practices of Anglo–Saxon jurisprudence [cite], which is usually equated with adequate notice and a fair hearing . . . .

326 F.2d at 608. See *Niemotko v. Maryland*, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951); *White v. Roughton*, 530 F.2d 750, 754 (7th Cir. 1976) (general assistance grants); *Misurelli v. City of Racine*, 346 F.Supp. 43 (E.D.Wis.1972) (denial of application to renew liquor license).

One procedural protection which is particularly important when a governmental benefit is denied in the first stage of an administrative procedure is the right to a statement of reasons why the application was rejected. As the Court of Appeals for the First Circuit observed in the context of a driver's license application:

> [Plaintiff's] strong interest in adequate notice of the specific reasons behind the Registrar's decision is clear. It is elementary that due process within administrative procedures requires the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Cite]. Although plaintiff, by exercising his statutory right to appeal an adverse decision of the Registrar, would have the opportunity to be heard by the Board, we are at a loss to comprehend how such a hearing could be said to be 'meaningful' if prior thereto the plaintiff was unaware of the grounds for the Registrar's decision. Maintaining even an adequate presentation before the Board under these circumstances would seem a Herculean accomplishment. Without a statement of reasons, an applicant would not know what, or for that matter whether, to appeal. Reasons for governmental action affecting important individual rights must be timely proffered in order to satisfy due process.

*Raper v. Lucey, supra*, 488 F.2d at 753. The court concluded that a statement of reasons would "serve as an important safeguard against unwarranted abuse of the Registrar's statutory discretion in approving or disapproving license applications." *Id.*

The fact that the plaintiff here was entitled to a *de novo* hearing before the state commission does not justify denying him all procedural protection with respect to his initial application, though it does place him in a somewhat different context. It would be unfair, for example to require the city to hold a full adversary hearing of the type anticipated by *Hornsby v. Allen, supra*, when the plaintiff was entitled to a full hearing on appeal. However, the city was constitutionally required at least to mandate a procedure through which the plaintiff was furnished a statement of reasons why his application was denied, and to advise him of his right to appeal.[3] Basic

---

**3.** Our holding that plaintiff has sufficiently alleged a violation of constitutional rights so as to state a claim under § 1983 makes it unnecessary to address plaintiff's contention that the ordinances are unconstitutionally defective for failing to provide standards governing mayoral discretion in evaluating "good character and reputation in the community." Third Amended Complaint, Count III.

procedural fairness is required at all levels of government. The courts have "not . . embraced the general proposition that a wrong may be done if it can be undone." *Bonner v. Coughlin*, 545 F.2d 565, 577 (7th Cir. 1976), quoting *Fuentes v. Shevin*, 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972).

Though the Supreme Court has never addressed the precise issue presented here, the Court has consistently held that a right to *de novo* review of a judicial proceeding does not eliminate the need for fairness at the initial trial. For example, in *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), the Court concluded that the plaintiff had not received a fair trial when his traffic offenses were heard by a mayor who had an indirect financial interest in the outcome of the case. The defendant argued that any bias at trial could be corrected in a *de novo* proceeding in a different court. The Supreme Court disagreed:

> This 'procedural safeguard' does not guarantee a fair trial in the mayor's court; there is nothing to suggest that the incentive to convict would be diminished by the possibility of reversal on appeal. Nor, in any event, may the State's trial court procedure be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance.

*Id.* at 61–62, 93 S.Ct. at 83. See *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973) (question whether state administrative agency is unconstitutionally biased is cognizable in federal court in spite of availability of *de novo* judicial review in state courts). See also

*Pregent v. New Hampshire Dept. of Employment Security*, 361 F.Supp. 782, 790 (D.N.H.1973) (*de novo* review of unemployment compensation claims insufficient). Though *Ward* and *Gibson* involved *de novo* review in state courts rather than administrative agencies, the principle they suggest applies equally in this case: when the state is engaged in what is fundamentally an adjudicative act, one which applies general legal standards to a particular case, the state must provide fundamentally fair procedures at every level of the process. The fact that the plaintiff may ultimately have received a hearing before the state commission if he had appealed does not give the mayor the right to brush off his application without even an explanation. Unless an applicant receives some procedural protection, there is no assurance that the mayor will not act arbitrarily or exceed the scope of his authority as local liquor control commissioner. See *Raper v. Lucey, supra*, 488 F.2d at 753.

The conclusion that the state must provide fundamentally fair procedures at every "administrative proceeding of a judicial nature," *Hornsby v. Allen, supra*, also accords with the general rule that a plaintiff need not exhaust his state judicial or administrative remedies before filing a federal civil rights action. See, e. g., *Brooks v. Center Township*, 485 F.2d 383, 386 (7th Cir. 1973), *cert. denied* 415 U.S. 911, 94 S.Ct. 1455, 39 L.Ed.2d 496 (1974).

For the reasons stated above, defendant City of Waukegan's motion to dismiss is denied.[4]

---

4. We note, however, that the plaintiff might establish the liability of the defendants at trial and yet not recover the substantial damages requested in the complaint. Mere procedural violations, without proof of actual damages, entitle a plaintiff in a § 1983 action to recovery only nominal damages. *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d

252 (1978). Therefore, unless the plaintiff can show that he actually was entitled to a liquor license which he could not have obtained by appeal to the state commission, or that he was otherwise damaged, he may not be entitled to compensatory damages in any substantial amount.